BALL ET AL. *v.* UNITED STATES (No. 1783).[1]

1. CONSTRUCTION, PARAGRAPH 127, TARIFF ACT OF 1913—"TUBES."
    Whether or not an article is a tube within the meaning of that term in paragraph 127, tariff act of 1913, depends wholly upon its form and not upon the use to which it is applied or the method by which it was manufactured.

---

[1] T. D. 37271 (33 Treas. Dec., 37).

2. CONSTRUCTION, PARAGRAPH 127, TARIFF ACT OF 1913—"FINISHED."

It is well settled that the finished product of one process of manufacture may become the material of the next in rank. Steel tubes which are to be .used as material for manufacturing other articles (such as "ball races" for ball bearings), and which have had applied to them all the processes necessary to complete their manufacture as tubes, are finished steel tubes within the meaning of that expression in paragraph 127, tariff act of 1913.

3. STEEL TUBES.

Seamless tubes of chromium steel, finished as tubes, but designed to be used, not as tubes but as material for the manufacture of other articles (such as "ball races" for ball bearings) are dutiable as "all other iron or steel tubes, finished, not specially provided for in this section" (par. 127, tariff act of 1913), and not as "all steels by whatever process made, containing alloys such as  *  *  *  chromium  *  *  *" (par. 110).

## United States Court of Customs Appeals, May 21, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7965 (T. D. 36699).

[Affirmed.]

*B. A. Levett* for appellants.

*Bert Hanson*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of counsel), for the United States.

[Oral argument Apr. 26, 1917, by Mr. Levett and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The importations in this case are made of steel. Their method of manufacture is stated by a competent witness as follows:

The steel is first cast into square ingots. These square ingots are rolled into round, solid blooms. These blooms are cut up into short lengths, and the short lengths are pierced under a steam hammer, which expands but does not lengthen them. They are then heated up again and rolled in the same type of mill as you would roll solid bars, over a cast-iron plug. After the first rolling they are pickled and ground to remove any surface defects. They are then rolled again to the size desired, after which they are again pickled and annealed and if necessary ground again, after which a piece is cut from each end, which is hardened and fractured, and if those fractures are satisfactory the material is ready for shipment.

The evidence also shows that the blooms are about 2 feet long when pierced; that the rolling processes thereafter applied cause their lengths to increase, with the result that the articles before us are from about 5 to 10 feet long, with inside diameters varying according to the lengths from about an inch to 3 or 4 inches. The thickness of the walls also varies according to size, and is not in any one size of exactly uniform thickness. So far as form alone is concerned, these articles may be described as seamless tubes or pipes. They are finished so far as the rolling processes are concerned, and are not designed to be further processed until they are employed as material in the manufacture of something else.

The importers are the agents in this country for the Swedish manufacturers. They sell practically all they import to one customer, because they are unable to obtain more than enough for his use.

He employs them as material for the manufacture of the inside and outside rings of ball bearings, called "ball races." To do this, the tubes are cut into appropriate short sections, machined inside and out, tempered, and ground. They have also been used in the manufacture of bushings, in the course of which they are processed similarly as in the manufacture of ball bearings. Seamless steel tubes like these can be used for many different mechanical purposes.

There is another process employed in producing seamless steel tubes, known as the drawing process, not clearly explained, in the course of which dies are employed, which probably results in walls more uniform in thickness than the process by which these importations have been produced. The evidence, however, tends to show that it is practically impossible by either process to roll or draw any tube absolutely to size or gauge, and the trade seems to allow a leeway of from 8 or 10 to 15 per cent variation of wall thickness in these tubes, and sometimes more, according to the requirements of the customer. Some witnesses testified that the tubes were finished because the final processes of manufacture in their present form had been applied, one saying that there was no such thing as an unfinished tube as it finally came from the rolls. One of importers' witnesses thought the tubes were not in a finished condition as imported. There is, however, no claim that anything remains to be done to fit them as material for any manufacture for which they are designed or suitable.

Some of the Government's witnesses testified that merchandise exactly like that here was known in the trade as a tube and at least one that it was regarded as a finished tube.

The question resolves itself to this: Are these seamless steel tubes, finished so far as their present condition is concerned and fit and designed only for use as material, dutiable as assessed under the provision for "all other iron or steel tubes, finished, not specially provided for in this section," found in paragraph 127 of the act of 1913? which we here quote:

127. Lap-welded, butt-welded, seamed, or jointed iron or steel tubes, pipes, flues, or stays; cylindrical or tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty; flexible metal tubing or hose, not specially provided for in this section, whether covered with wire or other material, or otherwise including any appliances or attachments affixed thereto; welded cylindrical furnaces, tubes or flues made from plate metal, and corrugated, ribbed, or otherwise reenforced against collapsing pressure, and all other iron or steel tubes, finished, not specially provided for in this section, 20 per centum ad valorem.

The importers protested, claiming the duty should be assessed under paragraph 110 of the same act as within the provision for "all steels by whatever process made, containing alloys such as * * * chromium * * *." The Board of General Appraisers overruled

the protest. It is conceded that the metal from which these tubes were made as above described contains chromium as an alloy.

The importers contend first, that the articles are not tubes within the common understanding; second, that they are not commercially shown to be tubes, but say that, assuming for the sake of argument that they are tubes, they are not finished tubes in fact or commercially so known. They concede that if the articles are finished tubes they are more specifically provided for in paragraph 127 than in paragraph 110.

Omitting for the present the question as to whether these articles are finished steel tubes, we consider whether or not they are tubes in the common acceptation of the term. · Restated briefly, they are 5 to 10 feet long, of diameters varying according to the size desired, from about an inch to approximately 3 or 5 inches, are hollow and have an exterior circumference that is practically a circle, while the circumference of the hollow or hole is almost a circle and as nearly so as the processes employed will produce. Nothing more is required to be done to them until used as material for the manufacture of something else.

The importers' counsel urges that they are not tubes because they are not *used* for the purposes in which tubes are usually employed. He points to the fact that as defined by the lexicographers, one meaning of the word "tube" is a "hollow cylinder of any material to convey liquids or gases," and says that the use to which these articles are applied is so far foreign thereto that they are not tubes in the common acceptation of the term.

Webster defines a tube as follows:

*Tube.*—1. A hollow cylinder, of any material, to convey liquids or gases or for some other purpose; a pipe; as, a fire *tube;* a water *tube;* a condenser *tube* (see Condenser, 2e); the *tubes* of a tubular bridge; a friction *tube;* the *tube* of a musical instrument; bronchial *tube;* a priming *tube,* etc.

The word "tube" is arbitrarily associated with certain articles or devices not customarily called *pipes*, and vice versa, although *tube* and *pipe* are practically synonymous mechanically; as, iron *pipe;* glass or rubber *tube;* gas *pipe;* boiler *tube.*

In Knight's Mechanical Dictionary, when referring to it as made of metal, it is said that a tube is a "metallic pipe of many kinds and uses."

We think it can not be said that whether or not an article is a tube depends upon the use to which it is applied. Webster's definition, which is fairly typical, recognizes "some other purpose" than as a conduit. The uses of steel tubes as material are so common and well known that in the absence of commercial designation we can not say the articles here are not steel tubes within the common understanding of that term. To formulate a definition of "tube" that would exclude them in this case would be to invite trouble in

another. Their form clearly answers the call of the definition, and that is sufficient.

It may be said in passing that we think, as was held by the board, that the Government has shown by competent evidence that is not disputed that, commercially speaking, these articles are tubes.

The importers undertake to weaken the effect of this commercial testimony by distinguishing between steel tubes manufactured by the rolling process and by the drawing process in which dies are used. We do not think the distinction is well founded. It is not a question of processes employed but of results obtained.

The next question for determination is whether or not these tubes are finished tubes within the meaning of paragraph 127. The Government introduced evidence tending to show that they are commercially known as such. Without deciding whether such commercial designation has or has not been established, we think it sufficiently appears that they are finished in fact.

The record conclusively establishes that these tubes are not as tubes further processed or designed to be further processed. All manufacturing processes that are necessary to be applied have been expended and the articles are finished from that standpoint. Whatever is done to them in manufacturing therefrom ball bearings or anything else is not, so far as appears, for the purpose of perfecting the tubes as such. It is well settled that the finished product of one process of manufacture may become the material of the next in rank. Tide Water Oil Company *v.* United States (171 U. S., 210), United States *v.* Richter (2 Ct. Cust. Appls., 167; T. D. 31680).

If authority were necessary to support the conclusion which we have reached, attention is called to G. A. 4251 (T. D. 20005), decided by the board in September, 1898. This construed the term "all other iron or steel tubes, finished, not specially provided for," found in paragraph 152 of the act of 1897, the ancestor paragraph of the one now under consideration, the relevant language of which is identical therewith and is also found in paragraph 151 of the act of 1909. The merchandise, as stated by the board, was weldless steel tubes about 2 inches in diameter and 10 to 18 feet in length. It was assessed as steel tubes, finished, under the paragraph and claimed dutiable under a provision in the first part thereof for welded, seamed, or jointed tubes. It appeared that after importation they were cut up into pieces 6 or 8 inches in length and used as appliances in spinning frames. Their precise condition as imported does not appear. The board, however, said:

* * * But we can give no weight to the importers' claim that the tubes are unfinished because they are not finished into these appliances. Each tube is manifestly a finished tube in the condition in which imported.

We find that the goods are not welded, seamed, or jointed boiler tubes and that they are finished steel tubes.

The assessment of the collector was affirmed.

This action of the board was reviewed in Circuit Court in Page et al. v. United States (113 Fed., 1006), where it was said by Coxe, Judge, in substance that the board had found upon testimony that the articles in question were drawn steel tubes, finished, that additional evidence had been taken in Circuit Court, that while ordinarily upon a question of fact the findings of the board would not be reversed unless wholly unsupported by the proof or clearly against the weight of evidence, the additional testimony taken had not eliminated the fact that the issue still depended upon conflicting testimony and the court said "* * * after considering the testimony, it concurs with the conclusion of fact reached by the board." The judgment of the board was affirmed. This implied an affirmance of its conclusion that the tubes were not unfinished because not finished into the appliances in the manufacture of which they were ultimately used. See also G. A. 3236 (T. D. 16483) relating to tubes for umbrella frames.

We think upon this record the merchandise here is in fact a finished steel tube within the meaning of paragraph 127 and therefore that the judgment of the board ought to be, and it is, *affirmed*.