UNITED STATES *v.* DOWNING & CO. (INC.) (No. 2670)[1]

CONSTRUCTION, PARAGRAPH 305, TARIFF ACT OF 1922, AIDED BY POLICY OF
 LAW—MATERIAL AND MANUFACTURE DISTINGUISHED—ADDITIONAL DUTY
 ON CHROMIUM STEEL TUBES.

 Paragraph 328, Tariff Act of 1922, levies duty on steel tubes, and paragraph
 305 levies additional duty on "steel in all forms and shapes * * * contain-
 ing more than six-tenths of 1 per centum of * * * chromium." The fin-
 ished product of one manufacture may become the material for the next.
 It was the intention of Congress to protect the producers of alloys in this
 country. Steel tubes, imported to be made into raceways for ball bearings
 are the result of one manufacturing process but the material for the next,
 and, having chromium alloy in excess of six-tenths of 1 per centum, are subject
 to the additional duty of paragraph 305. *Ball et al.* v. *United States*, 8 Ct.
 Cust. Appls. 143, explained and distinguished.

United States Court of Custom Appeals, May 29, 1926

APPEAL from Board of United States General Appraisers, G. A. 9026, T. D. 41033

[Reversed.]

*William W. Hoppin* and *Charles D. Lawrence*, Assistant Attorneys General
(*Oscar Igstaedter* and *John A. Kemp*, special attorneys, of counsel), for the United
States.
*Allan R. Brown* for appellee.

[Oral argument December 15, 1925, by Mr. Igstaedter and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD,
Associate Judges

BLAND, Judge, delivered the opinion of the court:

The appraiser's answer to the protest is as follows:

The merchandise in question consists of chrome steel tubes, n. s. p. f., and was
returned for duty as such at 25% ad val. under par. 328, and in addition 8% ad
valorem under par. 305, of the act of 1922.

According to the testimony the importation consists of chrome
steel tubes which are made of steel containing approximately 1 per
centum of carbon and 1½ per centum of chromium. The merchan-
dise is "commonly called high carbon, high chrome steel tubing," and
is used "to make ball bearings—the raceways for ball bearings—the
rings." The length of the tubes depends upon their outside and
inside diameter. Some of them are rather short in diameter—8 to
10 inches. The invoice shows them to be of several different lengths.
They were assessed for duty under paragraph 328 of the Tariff Act
of 1922, as steel tubes. Since the tubes contain more than six-tenths
of 1 per centum of chromium the collector assessed them with addi-
tional duty of 8 per centum under paragraph 305 of the same act.

---

[1] T. D. 41702.

Paragraphs 328 and 305 read as follows:

328. Lap-welded, butt-welded, seamed, or jointed iron or steel tubes, pipes, flues, and stays, not thinner than sixty-five one-thousandths of an inch, if not less than three-eighths of an inch in diameter, three-fourths of 1 cent per pound; if less than three-eighths and not less than one-fourth of an inch in diameter, 1¼ cents per pound; if less than one-fourth of an inch in diameter, 1¾ cents per pound: *Provided,* That no tubes, pipes, flues, or stays made of charcoal iron shall pay a less rate of duty than 1¼ cents per pound; cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty; welded cylindrical furnaces, tubes and flues made from plate metal, whether corrugated, ribbed, or otherwise reinforced against collapsing pressure, and all other finished or unfinished iron or steel tubes not specially provided for, 25 per centum ad valorem; flexible metal tubing or hose, whether covered with wire or other material, including any appliances or attachments affixed thereto, not specially provided for, and rigid iron or steel tubes or pipes prepared and lined or coated in any manner suitable for use as conduits for electrical conductors, 30 per centum ad valorem.

305. In addition to the rates of duty provided for in this schedule on steel in all forms and shapes, by whatever process made, and by whatever name designated, whether cast, hot or cold rolled, forged, stamped, or drawn, containing more than six-tenths of 1 per centum of nickel, cobalt, vanadium, chromium, tungsten, molybdenum, or any other metallic element used in alloying steel, there shall be levied, collected, and paid 8 per centum ad valorem.

It is conceded that the importation is dutiable under paragraph 328, but the importer contends that the collector improperly assessed the merchandise for additional duty under paragraph 305. The Board of General Appraisers agreed with the importer that its position was correct, and sustained the protest, from which action the Government appealed to this court.

It is argued by importer that the importation consists of steel tubes; that they are in paragraph 328 specifically provided for; and that, since they are *finished* steel tubes, they are not "steel in all forms and shapes, by whatever process made, and by whatever name designated, whether cast, hot or cold rolled, forged, stamped, or drawn."

Importer relies chiefly on the case of *Ball et al.* v. *United States,* 8 Ct. Cust. Appls. 143. In that case the tubes were evidently very similar to the ones at bar, since they were used as material for the manufacture of inside and outside rings of ball bearings, called "ball races." The tubes in that case contained chromium as an alloy. The court there was called upon to determine whether or not the goods were dutiable under paragraph 127 of the Tariff Act of 1913, which provided for "all other iron or steel tubes, finished," or whether they were dutiable under paragraph 110 of the same act, for "all steels by whatever process made, containing alloys such as  *  *  * chromium  *  *  *." The court held that the tubes were finished and that they were dutiable under paragraph 127, being there more specifically provided for than under paragraph 110. The question

before the court there was whether or not the tubes were finished. The parties conceded that if they were finished, they were more specifically provided for under paragraph 127 than under paragraph 110. The court reiterated the well-settled doctrine stated in *Tide Water Oil Co.* v. *United States,* 171 U. S. 210, *United States* v. *Richter,* 2 Ct. Cust. Appls. 167, and many other cases, to the effect that the finished product of one process of manufacture may become the material of the next manufacturing process in rank.

Let us compare the two paragraphs of the Tariff Act of 1922, which are now before us, with the paragraphs under consideration in the *Ball* case, with a view of determining whether the question involved in the decision of the case at bar was before the court in the *Ball* case.

Paragraph 328 is an initial-duty paragraph and there "steel tubes" are provided for. Paragraph 305 is not an initial-duty paragraph, but is an additional-duty paragraph which provides for the additional duty to apply to "steel in all forms and shapes, by whatever process made, and by whatever name designated, whether cast, hot or cold rolled, forged, stamped, or drawn, containing more than six-tenths of 1 per centum of  *  *  *  chromium  *  *  *," which is listed in Schedule 2.

In the *Ball* case the court was called upon to determine under which paragraph the merchandise would fall for initial duty. In the case at bar it is undisputed that it falls under paragraph 328 for initial duty, and the only question involved is as to whether it is justly subjected to additional duty under paragraph 305. The doctrine of specificity, which was controlling in the *Ball* case, has no application in the case at bar. Our problem resolves itself into making proper answer to the question: Are the tubes of steel of the importation "steel in all forms and shapes?" We answer this question in the affirmative.

It was the intention of Congress in the Tariff Act of 1922, by the enactment of the various alloy provisions to protect the producers of such alloys, in this country, and in order to do so, it has not only protected producers of those alloys by placing tariff duty upon the alloy itself, but by paragraph 305 it sought to reach the alloy content in manufactured "steel in all forms and shapes."

In this case it is pointed out that if manufactured steel shapes and forms are subject to the 8 per centum additional duty upon the chromium content, then chisels, hammers, balls for ball bearings, and other like completely manufactured steel tools or articles provided for *eo nomine,* would be subjected to the same duty under paragraph 305. That this was not within the contemplation of Congress, seems clear, since it is reasonable to assume that in determining the amount of duty to be placed upon a tool or a similar

completed article, Congress did so with a view of covering the alloy contained therein.

The merchandise at bar, although completely manufactured into tubes, and notwithstanding the fact that they may be finished tubes, is, nevertheless, steel forms or shapes which are used as materials for manufacture.

In fixing the rate of duty in paragraph 328 we do not believe Congress had in mind the chromium content of steel tubes, but in the enactment of paragraph 305 we think that Congress intended to subject steel tubes used for material in further manufacturing efforts to the 8 per centum additional duty on the chromium content provided for. To hold otherwise, in our judgment, would be to ignore what we regard as the manifest intention of Congress. To permit this high-chrome steel tubing, with a valuable chromium content, to be dutiable at the same rate of duty as ordinary iron or steel pipes or tubes, which were imported for use in the form imported without regard to any alloy content, would result in defeating the obvious intent of the legislature.

"*Steel* in all forms and shapes" conveys the idea of material, and "by whatever process made, and by whatever name designated, whether cast, hot or cold rolled, forged, stamped, or drawn," would seem to imply that some steel in certain forms and shapes had been subjected to a manufacturing process. We think, however, the last-quoted phrase implies only such a manufacturing process as would leave the product a material for succeeding manufacturing or structural efforts. Under the rule laid down in *Tide Water Oil Co.* v. *United States, supra,* and other cases, the importation at hand is a material, although it is conceded that it is a manufactured article.

The judgment of the Board of General Appraisers (now the United States Customs Court) is *reversed.*