The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* J. A. SCHNEIDER & Co. (No. 3646)[1]
UNITED STATES *v.* J. A. SCHNEIDER & Co. ET AL. (No. 3647)
J. A. SCHNEIDER & Co. ET AL. *v.* UNITED STATES (No. 3651)

---

[1] T. D. 46882.

United States Court of Customs and Patents Appeals, January 22, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Thomas J. Canty, John F. Kavanagh*, and *Ralph Folks*, special attorneys, of counsel), for the United States. *Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for Schneider & Co.

[Oral argument October 10, 1933, by Mr. Folks and Mr. J. Stuart Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

These are appeals from two judgments of the United States Customs Court. Suits Nos. 3646 and 3647 are appeals by the Government from the judgments of the United States Customs Court in protests Nos. 553610–G/80178, etc., Abstract No. 22837, and protests Nos. 459311–G/78866, etc., T.D. 46159, respectively. Suit No. 3651 is a cross-appeal by the importers from those judgments.

Merchandise, consisting of thin pieces of matched veneers of wood, of various sizes and shapes, inlaid with ornamental woods of various colors forming a variety of designs, was assessed for duty by the collector at the port of Chicago as parts of furniture at 40 per centum ad valorem under paragraph 412 of the Tariff Act of 1930.

The importers protested, claiming that the merchandise was "dutiable at 33⅓% under the last clause of par. 412, or at 20% under the first or last clause of par. 405," of that act.

The paragraphs read as follows:

PAR. 405. Veneers of wood, 20 per centum ad valorem; plywood, 40 per centum ad valorem, and in addition thereto on birch and alder plywood, 10 per centum ad valorem; wood unmanufactured, not specially provided for, 20 per centum ad valorem.

PAR. 412. Spring clothespins, 20 cents per gross; furniture, wholly or partly finished, and parts thereof, and folding rules, all the foregoing, wholly or in chief chief value of wood, and not specially provided for, 40 per centum ad valorem; wood moldings and carvings to be used in architectural and furniture decoration, 40 per centum ad valorem; bent-wood furniture, wholly or partly finished, and parts thereof, 47½ per centum ad valorem; paintbrush handles, wholly or in chief value of wood, 33⅓ per centum ad valorem; wood flour, and manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for, 33⅓ per centum ad valorem.

The court below held, on the record before it, that the imported merchandise was not dutiable as parts of furniture, as assessed by the collector and as claimed by the Government; that it was not veneers of wood or wood unmanufactured, as claimed in the protests, but that it was dutiable as manufacturers of wood, not specially

provided for, at 33⅓ per centum ad valorem under paragraph 412, as alternatively claimed in the protests.

Both parties were dissatisfied with the conclusions reached by the trial court, and, accordingly, appealed from its judgments.

Counsel for the Government insist that the merchandise is dutiable as parts of furniture at 40 per centum ad valorem under paragraph 412, as assessed by the collector.

Counsel for the importers, on the contrary, contend that the merchandise is dutiable as veneers of wood at only 20 per centum ad valorem under paragraph 405, but that if it is not so dutiable, it is dutiable as manufactures of wood at 33⅓ per centum ad valorem under paragraph 412, as held by the trial court.

On the trial below, counsel for the importers introduced in evidence Exhibits Nos. 1 and 2, and Collective Exhibit No. 3, as representative of the imported merchandise.

Exhibit No. 1 is rectangular in shape, about 26 inches in length and 17 inches in width. It is composed of matched veneers of wood inlaid with various colored woods. The inlays form a floral and scroll design. The several pieces composing the exhibit are held in place by paper glued to their under surfaces.

Exhibit No. 2 is circular in form, and about 22 inches in diameter. It has a center composed of matched veneers of wood, surrounded by an inlay of ornamental woods, and a border, differing in color from the center, composed of matched veneers of wood. The various pieces composing the exhibit are held together by means of paper glued to their under surfaces.

Collective Exhibit No. 3 consists of several small articles of various shapes, sizes, and designs, composed of matched veneers of wood inlaid with ornamental woods.

It appears from the record that all of the imported articles, represented by Exhibits 1 and 2, and Collective Exhibit 3, are approximately one twenty-fifth to one thirtieth inch in thickness. They are used for purposes of decoration on many articles of furniture, including the tops of tables, on walls, doors, household and shop fixtures, boxes, automobile panels, and other articles. We think it fairly appears from the record, however, that they are used chiefly on furniture. In any event, it has not been established that they are not chiefly so used. They are known, according to the witnesses, as "inlay veneers, inlaid veneers, fancy veneers, decorated veneers," and "marquetry."

The witness Wade S. Bender, president of J. A. Schneider & Co., one of the importers, stated that the involved articles were not suitable in their imported condition for their ultimate uses; that, in order to apply them to table tops or other articles, they must be trimmed,

"the veneer on which they are put is first routed out; they are glued to cheap wood, which is commonly known as plywood; then band-sawed or shaped, and sanded, and then finished, after which they are ready to be applied to the particular piece on which they are finally used." Referring to illustrative Exhibit Y, an article similar to those in Collective Exhibit 3, the witness described the processes necessary to make it a part of a panel in furniture or other articles. He said:

If this were to be placed in a walnut panel, we would take walnut veneer, and cut out the veneer, rout out the veneer so that this would fit in. This in turn would be placed in there, and would be taped on the back. Of course, that walnut panel could be two feet long, or three feet, or four or eight feet long, depending upon how much veneer is to be added to this. Then after it is taped together, it would have to be applied to a core stock or plywood, sanded and finished, before a finished panel would be had.

The witness William M. Friedlaender, testifying for the importers, stated that he was familiar with the uses of articles like those here involved; that, in order to attach them to articles of furniture or other articles, it is necessary—

* * * to provide a core, as we term it, which may be of one, two, or three layers of wood laminated together. This exhibit 1 would then be glued, or what we would term the exposed surface, face down, on this core of wood. That is, put in presses and permitted to dry. Then it must be trimmed, run under a sander, or in a small shop it might be done with sandpaper or glass, and all of this paper that is glued to the back is sanded away, so that the surface would appear showing the same design that we have on the front. Then that must be run through another machine, must be trimmed or shaped to what particular type, round, oval, or that the table top is intended to be. Then it has got to be finished, lacquered, treated, or polished. Then it has to be fastened onto a table top and it becomes a table top.

Q. But do you say that all of these processes or manufacturing processes must be and are applied to articles like exhibits 1 and 2 before they can be or are used in any articles of furniture?—A. In any article at all.

The terms "veneer" and "marquetry" are defined respectively as follows:

Veneer, * * * 1. A thin leaf or layer of a more valuable or beautiful material for overlaying an inferior one, esp. such a thin leaf of wood to be glued to a cheaper wood.—Webster's New International Dictionary.

Veneer, n. 1. A thin layer of rare or beautiful material, as wood, stone, ivory, or mother-of-pearl, fastened upon a commoner surface to produce a rich or artistic effect.—Funk & Wagnalls' New Standard Dictionary.

Marquetry, n. * * * Inlaid work, as in furniture; work inlaid with pieces of wood, shells, ivory, and the like, of several colors.—Webster's New International Dictionary.

Marquetry, n. Art. Inlaid work of ornamental woods, or of woods interspersed with stones of various colors, ivory, metal, mother-of-pearl, etc. * * * Specimens of ancient Egyptian stools and chairs, some beautifully inlaid with marquetrie of ivory and various woods * * *.—Funk & Wagnalls' New Standard Dictionary.

With regard to those terms, we quote also from the Encyclopedia Britannica:

VENEER, a thin sheet of superior wood, covering a surface of inferior wood. Veneers may be sliced with a knife (*knife-cut*) or cut with a saw (*saw-cut*) from a section of a tree (*flitch*).

The art of producing and using veneers dates back to the earliest days of civilization, and it may be looked upon even as a standard of human development, since efficient veneering has always followed the wake of human progress. * * * Intarsia and *marquetry* work are closely allied to and inter-dependent upon the art of veneering.

In the usual process of manufacture, the flitches are steamed before being cut, and the sheet of veneer thus obtained is carefully dried. Veneers may be cut along the grain, through the log, or from cross-sections of the log; the figure and design of the veneer obtained from the different methods employed vary widely and the art of veneering consists as much in the most effective utilization of the log as in the careful and suitable application and matching of the veneers afterwards. Veneers are also produced by means of the rotary cutting process as a raw material for *plywood*. A part of a log is inserted lengthwise between two pins on a rotating lathe, and a knife, pressed against it, peels off an endless ribbon of veneer.

MARQUETRY * * *, an inlay of ornamental woods, ivory, bone, brass and other metals, tortoise-shell, mother-of-pearl, etc., in which shaped pieces of different materials or tints are combined to form a design. It is a later development of the ornamental inlays of wood known by the name of Intarsia, and though in the main the latter was a true inlay of one or more colours upon a darker or lighter ground, while marquetry is composed of pieces of quite thin wood or other material of equal thickness laid down upon a matrix with glue, there are examples of Intarsia in which this mode of manufacture was evidently followed.

In the Summary of Tariff Information, 1921, prepared for the use of the Finance Committee of the United States Senate, the United States Tariff Commission, relative to paragraph 404, H.R. 7456, stated that—

A veneer is a thin sheet of wood, often a valuable cabinet wood, used for gluing to the surface of an inferior wood to improve the appearance of the exterior. Veneers are also used for manufacturing plywood. Two or more layers of veneer are glued together, the grain of each layer running crosswise to the grain of the layer to which it is glued, thus increasing the strength and preventing warping and splitting. Plywood is much used in the manufacture of furniture and boxes. Veneers of cheap woods are used in the manufacture of baskets. There are three methods of making veneers, (1) by a peripheral slicing, (2) by longitudinal slicing, (3) by sawing.

In the Summary of Tariff Information, 1929, on the Tariff Act of 1922, compiled by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives, the Tariff Commission, relative to the provision for veneers of wood, contained in paragraph 403 of that act, reported that—

Veneer is a thin section or sheet of wood cut from logs, bolts, or flitches. It is produced from many species of hardwoods and softwoods in thicknesses from one one-hundred-and-fortieth to five-eighths of an inch.

The species used in the manufacture of veneer embrace practically every kind found in the United States. In addition a number of imported woods are used, such as mahogany, circassian walnut, rosewood, and satinwood. Different species have preferred uses, as oak, walnut, birch, gum, and mahogany for furniture because of their attractive grain and finish; Douglas fir for doors because of its strength as well as attractive grain; Spanish cedar for cigar boxes because of its color, grain and principally its fragrance; cottonwood, fir, and the lower grades of red gum for fruit and berry boxes and baskets and other types of containers, because of their relative cheapness and adaptibility to bending.

From the foregoing definitions, and the quoted reports of the Tariff Commission relative to the provisions for veneers of wood, contained in the tariff acts of 1913 and 1922, it is evident, we think, that the Congress did not intend that articles like those here involved should be included within the provision for veneers of wood, contained in paragraph 405, *supra*. See *United States* v. *Briggs Manufacturing Co.*, 14 Ct. Cust. Appls. 1, T.D. 41526.

It appears from the testimony of record, and from an examination of the exhibits in the case that the involved articles are more than mere veneers of wood; that by the processes of cutting, matching, and inlaying veneers of wood, a new article, having a new name, character, and use, has been produced. The involved articles are not purchased nor dealt in as veneers of wood, and, although their uses are somewhat akin to those of veneers of wood, they are not identical. We conclude, therefore, that they are manufactures of wood, and not "veneers of wood" within the purview of paragraph 405.

It appears from the record that, although the involved articles are manufactures of wood, they require further processing and must be combined with other materials before they become parts of furniture. Although they are the finished products of certain processes of manufacture, they are, nevertheless, material for subsequent manufacturing processes necessary to convert them into parts of furniture, finished or unfinished. See *Ball et al.* v. *United States*, 8 Ct. Cust. Appls. 143, T.D. 37271, and cases cited; *United States* v. *Downing & Co., Inc.*, 14 Ct. Cust. Appls. 194, T.D. 41702.

We must hold, therefore, on the record before us, that, in a tariff sense, the involved articles are not veneers of wood, nor are they parts of furniture, finished or unfinished. They are, in our opinion, manufactures of wood, and, in the absence of a more specific provision therefor, dutiable as such under paragraph 412, as held by the trial court.

The judgments are *affirmed*.