(C.D. 2063)

ATLANTIC ALUMINUM & METAL DISTRIBUTORS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 21, 1959)

*Michael Stramiello, Jr.*, for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: In this cause of action, the question for our determination is whether certain aluminum products should be classified for tariff purposes as aluminum bars or rods.

The imported items in controversy, represented by exhibits 1 through 9, with one exception, are cylindrical shapes, hollow in form, having diameters ranging from three-eighths of 1 inch to about 2 inches and in lengths from approximately 34 inches to 21 feet. The

exception, exhibit 7, is a hollow rectangular shape approximately three-fourths of 1 inch square and 23 inches long. In its imported condition, however, it was 12 feet long.

The collector of customs classified the merchandise as articles, not specially provided for, composed in chief value of aluminum, and duty was imposed thereon at the rate of 22½ per centum ad valorem in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

Four protests, which are enumerated in the attached schedule and made a part of this decision, were consolidated for trial.

Plaintiff, by its protests, invokes the provisions of paragraph 374 of said act (19 U.S.C. § 1001, par. 374), as modified by said general agreement, *supra*, which provides for aluminum and alloys in which aluminum is the component material of chief value "in coils, plates, sheets, bars, rods, circles, disks, blanks, strips, rectangles, and squares," which are made dutiable at 3 cents per pound.

It may be noted here that the items in controversy are generally referred to on the invoices as aluminum tubes or as aluminum alloy tubing and, moreover, the articles are described on the entries as "aluminum tubing."

Plaintiff introduced the testimony of two witnesses and defendant called one.

Plaintiff's first witness, Maurice Norman Katz, had been vice president of the plaintiff company since 1946 and described his duties as "general manager of over-all operations of the purchasing and storing and sale of aluminum, copper and brass mill products." He received a bachelor of science degree in metallurgy from the Massachusetts Institute of Technology and, as a result of his educational background and practical experience in the purchasing, warehousing, storage, and sale of aluminum, copper, and brass mill products, such as sheets, circles, structures, bars, rods, tubes, et cetera, he possessed an intimate knowledge of the articles in controversy—their physical, mechanical, and chemical properties as well as their utility. After importation, the subject merchandise is further manufactured by forging, bending, riveting or threading, polishing, and machining for use in the manufacture of clothesracks, TV antennas, chairs, tables, clothes closet rods, bicycles, playpens, lawn furniture, and some other articles.

Having listed the factories or mills in Europe as well as in the United States where these aluminum products are made, Katz testified that the processes of manufacture are substantially the same in all mills. As stated by the witness, "There are two general methods of producing in a mill these types of tubes." In both instances,

however, the millman begins by taking an aluminum alloy extrusion ingot which is generally a round cylindrical slab of aluminum alloy. These ingots are heated up to approximately 800 degrees Fahrenheit, then put through an extrusion press operation. By means of a ram, the extrusion ingot is pushed into the face of a die, and the solid extrusion ingot coming out of the die takes on a predetermined form, the die being so shaped that the end product is a hollow shape.

The other method, in which the tubing is drawn, has procedures essentially the same as described above, except that "the tubes that come out of the extrusion press are greater in cross-sectional dimensions than the end product that the mill plans to produce." These are called tubing blooms or stock. The tube blooms are then taken to draw benches and pulled through a die in one stage or several to bring the tubes to their final dimensions.

When asked to give his understanding of the meaning of the terms "bar" and "rod," Katz defined a metal rod as "an elongated piece of metal whose cross-section is circular," regardless of whether it be hollow or solid. A metal bar, he defined "as an elongated piece of metal whose cross-section is in the form of a square or a rectangle or hexagon, not circular," whether hollow or solid. The witness was then read the definitions of the terms "bar" and "rod" appearing in Webster's New International Dictionary of the English Language, 1920 edition, as follows—

bar. 1. a piece of wood, metal, or other material long in proportion to its breadth and thickness, and having in general considerable rigidity such as one used for a lever, support, hindrance, obstruction, fastening, etc. as the bar of a door. 3. A piece of some substance of indefinite size, shaped so as to be long in proportion to its breadth and thickness.

rod. 1. A straight and slender stick, a wand, hence, any slender bar as of wood or metal, * * *.

Katz was then asked if those definitions conform to the articles marked exhibit 1 through 9, to which he answered in the affirmative.

That the distinction between metal bars and rods is not well defined is indicated in the following testimony of the witness Katz who said—

* * * Sometimes people will refer to a rod according to the definition I gave to the Court as an aluminum round bar; however, when you get down to actual definitions, my interpretations are that it would be more appropriate to call it an aluminum rod rather than an aluminum round bar, but actually in the trade, it is not that important; it is just a matter of usage of language.

Q. But, you heard a round form object called a bar?—A. Yes, sir.

Q. Have you also heard an object with a form other than the round or circular called a rod?—A. Yes, sir.

The attention of the witness was then invited to exhibit 7, which is square in cross-section, and was asked if that was a rod or a bar. He answered—

In my technical definition, I would say that would be an aluminum hollow bar. However, I have heard very very often someone would refer to it as an aluminum square rod also. They are used interchangeably.

The witness was next interrogated as to the various terms used in the trade in referring to articles such as exhibits 1 through 9.

A. They are referred to as tubes; they are referred to as poles; they are referred to as hollow bars; hollow rods; they are referred to as shafts; also referred to as other names as well.

He also stated that his company had ordered products like exhibits 1 through 9 as hollow rods or bars and also as tubes. He described a mill product as what is generally known as a semifinished form, which would include aluminum sheets, coils, circles, tubes, structures, extrusions, rods, and bars, as well as the merchandise represented by exhibits 1 through 9.

On cross-examination, the witness' attention was invited to the definition of the word "tube" in Funk & Wagnalls New Standard Dictionary of the English Language, 1949 edition, as follows:

A hollow cylinder of any material to convey liquids or gases, or for some other purposes.

and he stated—

That would be one definition I would accept.

When asked if he had ever heard exhibit 7 referred to as a square tube, Katz answered in the affirmative.

Plaintiff's second witness, Eugene Bossert, testified substantially as follows: For the past 7 years he had been in charge of the New York sales office of the Atlantic Aluminum & Metal Distributors, Inc., plaintiff herein, engaged in selling aluminum, copper, and brass products; that the Glaro Machine Products Co. of Copaigue, Long Island, purchased a type of products handled by his company as aluminum bars or tubing; that he had been to the plant of the Glaro Co. and had seen the use to which the articles were put, and exhibit 11 was introduced to illustrate some of the articles manufactured by the Glaro Co. from merchandise like exhibits 1 through 9, such as costumers, wall racks, wardrobe racks, and hangers. Item 66TD–1882 was identified on exhibit 11 as a double-shelf aluminum wall rack, having horizontal bars similar to exhibit 4. He had heard the manufacturer refer to these articles as tubing, bars, and rods.

When asked where he drew the distinction between tubing and rods, witness Katz, who was recalled to the witness stand, replied—

Actually, sir, there are two distinctions, one area of distinction falls into the academic differential and the other distinction is in the common usage in the trade. In the case of a common usage of the trade, there seems to be interchangeability with the main emphasis to be tubes or tubing.

According to the witness, rods and tubing are used interchangeably "in varying manufacturing operations * * *. A tube, the common

definition or hollow rod, whichever you may call it for the sake of classification, I will keep referring to it as a tube—."

Defendant's witness, James K. Kingsolver, had been associated the past 12½ years with the Reynolds Metal Co., producer primarily of aluminum and aluminum mill products, fabricated products, and packaging materials. He was a graduate of North Carolina State College, with a bachelor's degree in chemical engineering. His activities at the Reynolds Metal Co. enabled him to acquire an intimate knowledge of the production and sales organization of the Reynolds Co. Based upon his knowledge and experience, it was his opinion that the articles represented by exhibits 1 through 9 were neither rods nor bars but were tubing. A rod "would have to be a cross-section of solid cross-section in excess of ⅜ inch diameter. It would have to be round. * * * It would have to be solid." For the exhibits to constitute bars, it would be necessary for them to be square or rectangular in shape, and they would have to be solid in cross-section.

It is clear from the testimony of all of the witnesses that there is no substantial difference of opinion as to the character, material of which made, the method of production (either by drawing or the extrusion process), and utility of the subject merchandise. The only conflict in the testimony concerns the name or designation of the merchandise as commonly and commercially understood, assuming as we may that the common and commercial meanings are the same in the absence of an approved, established commercial meaning of the term differing from the common meaning of the name by which the articles are known. Since counsel for plaintiff has stated in the record that "I am not making the claim for commercial designation" of the terms "bars" and "rods" of aluminum, it becomes important for us to determine whether the merchandise, represented by exhibits 1 through 9, is commonly known as bars or rods.

It is well settled that testimony of tradespeople may be received in an effort to establish the common meaning of tariff terms. However, it is advisory only but not controlling. Upon this phase of case, the testimony on behalf of plaintiff is so indefinite concerning the name or names by which the products represented by exhibits 1 through 9 are known that it does not aid the court materially in clarifying the meaning of the terms "rods" and "bars" in the aluminum industry. The two witnesses for the plaintiff testified that the articles in controversy were known indifferently as bars, rods, or tubing. Defendant's witness, however, representing Reynolds Metal Co., large producer of aluminum products, and who was well informed in the production and sales organization in that company, unequivocally testified that the articles represented by exhibits 1 through 9 would

not be recognized as rods or bars but as tubing and that the aluminum trade does not designate such articles as hollow rods or bars.

In the light of the testimonial record, it is not without significance that the importations were invoiced as tubes or tubing and were entered for duty as aluminum tubing.

Plaintiff invites our attention to the provision in paragraph 304 of said act for "* * * billets and bars, whether solid or hollow; * * *" as indicating that Congress recognized the fact that a bar might be either solid or hollow. However, paragraph 374, which provides for aluminum articles, enumerates the various forms which are intended to be covered thereby, such as "coils, plates, sheets, bars, rods, circles, disks, blanks, strips, rectangles, and squares." For some reason not stated, the statute did not provide for aluminum tubes or tubing and, as above pointed out, the representative of the Reynolds Metal Co. stated that the *aluminum* trade does not recognize such articles as *hollow* rods or *hollow* bars.

In support of its contention that the products represented by exhibits 1 through 9 were within the common meaning of the term "rods" or "bars," plaintiff cites the following lexicographic definitions:

Webster's New International Dictionary:

bar, *n.* * * * 1. A piece of wood, metal, or other material, long in proportion to its breadth and thickness, and having, in general, considerable rigidity, such as one used for a lever, support, hindrance, obstruction, fastening, carrying pole, etc.; as, the *bar* of a door.

    *        *        *        *        *        *        *

3. A piece of some substance, of indefinite size, shaped so as to be long in proportion to its breadth and thickness; also, the quantity contained in such a piece; as, a *bar* of gold or of lead; a *bar* of soap, Sometimes used in a collective sense; as, how much *bar* (gold) is there?

Funk & Wagnalls New Standard Dictionary:

bar, *n.* 1. A piece of wood, metal, or other solid material, usually long in proportion to its width and thickness, * * *.

Audels Mechanical Dictionary, 1942:

Rod.—1. A wand, stick or long slender bar of any material, wood, iron, brass, steel, etc.

Funk & Wagnalls New Standard Dictionary of the English Language, 1942 edition:

rod, *n.* 1. A shoot or twig of any woody plant; a straight, slim piece of wood or other material; * * *.

Webster's New International Dictionary, 1930 edition:

rod, *n.* * * * 1. A straight and slender stick; * * * hence, any slender bar, as of wood or metal. * * *

Webster's New International Dictionary of the English Language, 1920:

rod. 1. A straight and slender stick; a wand; hence any slender bar, as of wood or metal.

Knight's American Mechanical Dictionary, 1876:

Rod. A straight, slender piece of wood or metal, as the ramrod, wiping-rod, rifling-rod, used by gunsmiths and armories.

  &ast;   &ast;   &ast;   &ast;   &ast;   &ast;   &ast;

A connecting piece, as that between the cross-head of an engine and a crank. A *connecting-rod.* And so on.

To the foregoing definitions of rod and bar it is of interest to note the following definitions of the word "tube":

Webster's New International Dictionary, second edition, 1948—

tube, *n.* * * * 1. a A hollow cylinder, of any material, to convey liquids or gases or for some other purpose; as, a fire *tube;* a water *tube;* a condenser *tube* * * * the *tubes* of a tubular bridge; a friction *tube;* the *tube* of a musical instrument; bronchial *tube;* a priming *tube,* etc. * * *. b Any similar hollow conduit, often oval, square, or polygonal in section.

Funk & Wagnalls New Standard Dictionary of the English Language, 1942 edition—

tube, *n.* 1. A long hollow cylindrical body, as of wood, metal, rubber, or glass, generally used for the conveyance of something through it, but often as a receptacle for holding something; * * *.

The Oxford Dictionary, volume X, part I, 1926—

Tube * * * 1. A hollow body, usually cylindrical, and long in proportion to its diameter, of wood, metal, glass, or other material, used to convey or contain a liquid or fluid, or for other purposes; * * *.

The Century Dictionary, volume VI, 1891—

tube, *n.* 1. A pipe or hollow cylinder, especially when of small size and used as a conduit for liquids, or for containing liquids, as in some forms of scientific apparatus.

Knight's American Mechanical Dictionary, volume III, 1876—

Tube. 1. A metallic pipe, of many kinds and uses.

This naturally leads to a discussion of the case of *Ball et al.* v. *United States,* 8 Ct. Cust. Appls. 143, T.D. 37271, cited by defendant, where the court had before it for consideration the question whether a certain product was a tube within the meaning of the term "steel tubes" in paragraph 127 of the Tariff Act of 1913. In disposing of the question, the court made the following observations:

The importers' counsel urges that they are not tubes because they are not *used* for the purposes in which tubes are usually employed. He points to the fact that as defined by the lexicographers, one meaning of the word "tube" is a "hollow

cylinder of any material to convey liquids or gases," and says that the use to which these articles are applied is so far foreign thereto that they are not tubes in the common acceptation of the term.  [Italics quoted.]

Webster defines a tube as follows:

> *Tube.*—1.  A hollow cylinder, of any material, to convey liquids or gases or for some other purpose; a pipe; as, a fire *tube*; a water *tube*; a condenser *tube* (see Condenser, 2e); the *tubes* of a tubular bridge; a friction *tube*; the *tube* of a musical instrument; bronchial *tube*; a priming *tube*, etc.
>
> The word "tube" is arbitrarily associated with certain articles or devices not customarily called *pipes,* and vice versa, although *tube* and *pipe* are practically synonymous mechanically; as, iron *pipe*; glass or rubber *tube*; gas *pipe*; boiler *tube*.

In Knight's Mechanical Dictionary, when referring to it as made of metal, it is said that a tube is a "metallic pipe of many kinds and uses."

We think it can not be said that whether or not an article is a tube depends upon the use to which it is applied.  Webster's definition, which is fairly typical, recognizes "some other purpose" than as a conduit.  The uses of steel tubes as material are so common and well known that in the absence of commercial designation we can not say the articles here are not steel tubes within the common understanding of that term.  To formulate a definition of "tube" that would exclude them in this case would be to invite trouble in another.  Their form clearly answers the call of the definition, and that is sufficient.

The significance to be attached to the foregoing definitions derives from the fact that in common speech a notable distinction between bars and rods on the one hand and tubes on the other is that the term "tube" connotes a *hollow,* cylindrical shape, and since Congress saw fit, in drafting paragraph 374, *supra,* to specify the exemplar forms of aluminum products which were intended to be embraced within that paragraph it is significant that it omitted any reference to aluminum tubes or tubing.

Defendant, in its brief, invites our attention to the following extract from "Summaries of Tariff Information, Volume 3, Metals and Manufactures, Part 5, 1948," prepared by the United States Tariff Commission for the use of the Ways and Means Committee of the House of Representatives:

ALUMINUM AND ALUMINUM ALLOY METAL, SCRAP, AND MILL PRODUCTS OF ALUMINUM ALLOY (PAR. 374)

Comment

*Scope and description.*—This summary covers aluminum and aluminum alloy metal, aluminum scrap, and mill products of aluminum and aluminum alloy (coils, plates, sheets, bars, rods, circles, disks, blanks, strips, rectangles, and squares).  *It excludes* aluminum wire; aluminum foil, powder, and leaf; and *miscellaneous fabricated aluminum products* not specially provided for.[1]  [Italics supplied.]

---

[1] See separate summaries on:  Specialty wire, except wire of gold, silver, platinum, tungsten, or molybdenum (wire n.s.p.f.), par. 316(a); aluminum foil, aluminum leaf, bronze powder of aluminum and powdered foil, and aluminum powder in leaf, par. 382(a); and miscellaneous base metal manufactures, par. 397.

This lends some support at least to the view above expressed as to the congressional limitation of aluminum products to be classified for duty in paragraph 374.

Upon the record and for the reasons above stated, we are of the opinion that the merchandise represented by exhibits 1 through 9 herein is not within the common meaning of the term "bars" or "rods," as those words are employed in paragraph 374 and we so hold.

The protests are overruled and judgment will issue accordingly.