(C.D. 4140)

BUCHANAN ELECTRICAL PRODUCTS CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 7, 1970)

*Sharretts, Paley, Carter & Blauvelt* (*Gail Cumins* of counsel) for the plaintiff.
*Carl Eardley*, Acting Assistant Attorney General (*Harold L. Grossman* and *Frederick L. Ikenson*, trial attorneys), for the defendant.

Before RAO, FORD, and ROSENSTEIN, Judges

ROSENSTEIN, Judge: The merchandise covered by these protests consists of copper articles described on the invoices as tubes. They are rectangular in cross-sectional shape. The items vary in length from approximately $11/16$ inch to $1\frac{1}{8}$ inches, and vary in maximal cross-sectional measurement from approximately $5/16$ inch to $\frac{1}{2}$ inch (collective exhibits 1—A, 1—B, and 1—C).

The imported merchandise was manufactured by taking raw material consisting of seamless copper tubing ranging in lengths from 10 to 20 feet and then drawing it through dies to lengths of 20 to 30 feet. The tubing here used was drawn to about 30 feet in length, then cut in half and drawn again to the shape and specifications required by the plaintiff customer.

The importations at bar were classified under item 657.30 of the Tariff Schedules of the United States with duty assessment at $22\frac{1}{2}$ per centum ad valorem plus 1.275 cents per pound as articles of copper not specially provided for. Plaintiff claims the merchandise properly classifiable under item 613.02 of said schedules at the rate of 5.2 cents per pound under the provision therein for "pipes and tubes and blanks therefor".

It appears as disclosed by the record, that the Government has taken the position that rectangular copper tubes in lengths of $1\frac{3}{16}$ inches or more are properly classifiable under item 613.02 of the tariff schedules, as seamless pipes and tubes and blanks therefor of copper; but that when such tubes are imported in lengths under $1\frac{3}{16}$ inches, they are

dutiable under item 657.30 of the schedules as articles of copper not specially provided for (R. 2–3). As heretofore indicated, all of the merchandise involved in these protests is under 1¾₁₆ inches in length. Plaintiff contends that a "tube", as that term is known in the common meaning and in the trade and commerce of the United States can be of any length and that the imported merchandise fits the commercial and common understanding of the term "tubes".

The pertinent provisions of the Tariff Schedules of the United States are as follows:

Schedule 6, Part 2, Headnote 3(e):

(e) the term *"pipes and tubes and blanks therefor"* covers tubular products, including hollow bars and hollow billets but not including hollow drill steel, of any cross-sectional configuration, by whatever process made, whether seamless, brazed, or welded and whether with an open or lock seam or joint.

\* \* \* \* \* \* \*

Pipes and tubes and blanks therefor, pipe and tube fittings, all the foregoing of copper:
   Pipes and tubes and blanks therefor:
      Copper, other than alloys of copper:

613.02       Seamless _____ 5.2¢ per lb.

Schedule 6, Part 3, Subpart G, Headnote 1:

1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.

\* \* \* \* \* \* \*

Articles of copper, not coated or plated with precious metal:
657.30      Of copper, other than alloys of copper; of nickel silver or of cupro-nickel _____ 1.275¢ per lb+ 22.5% ad. val.

The record in this case consists of the testimony of three witnesses, all called by the plaintiff, and several exhibits. Defendant did not introduce any evidence at the trial.

The exhibits received in evidence consist of the following:

Collective exhibit 1, marked individually as exhibits 1–A, 1–B and 1–C is representative of the imported merchandise.

Exhibits 2–A through 2–E illustrate certain processes applied to the imported merchandise after importation into the United States.

The record describes these manufacturing operations as follows: The first manufacturing step is to slot each tube (exhibit 2–A) (R. 10); after the slotting operation, the "tube" goes through a drilling and tapping operation in which two holes in each piece are drilled and tapped (exhibit 2–B) (R. 12); the tube is then plated (exhibit 2–C) (R. 12); after the plating, two screws are added (exhibit 2–D) (R. 13); and the imported "tube" is then assembled to a plastic member (R. 14). The finished product (exhibit 2–E) was identified as "a terminal block section * * * used to transfer electrical current" and as "a connector to transfer electrical current."

Collective exhibit 4 contains samples of tubular products manufactured and sold in the United States by plaintiff company for other concerns.

Collective exhibit 5 contains samples of tubular products sold in the United States by Precision Tube Company, Inc., hereinafter identified.

Plaintiff's first witness was Mr. Albert Middleman, the manufacturing manager of the plaintiff corporation since 1950. The record discloses that he was responsible for all the manufacturing of the company products, together with the development and design of all processing equipment. He identified collective exhibits 1–A, 1–B and 1–C as being representative of the merchandise here involved.

Plaintiff's second witness was Mr. William J. Boehm, vice-president and general manager of Ilsco Corporation, a manufacturer of tubular products, whose subsidiary in Canada was identified as the company that manufactured the imported merchandise.

Plaintiff's last witness was Mr. Joseph Paul Johnson, vice-president and general manager of the Tube Mill Division of Precision Tube Company, Inc., a redraw mill for brass, copper and aluminum tubes. His company manufactures merchandise like the imported merchandise in lengths ranging from 38 feet down to any length desired by a customer. This witness considered the samples in exhibit 5 to be "tubes".

Such further reference will be made to the testimony of plaintiff's witnesses as is deemed pertinent in the determination of the issue herein.

Plaintiff in this case has indicated that it does not claim the involved merchandise to be pipes, but rather "tubes" and blanks (plaintiff's brief page 2). However, plaintiff subsequently states that the issue in this case is whether the imported merchandise is "tubes", and, in fact, directs its entire argument to the proposition that the merchandise at bar is tubes. We are not here concerned with the classification of the imported items *after* importation. With respect to the provision in item 613.02 of the tariff schedules for "blanks", plaintiff's witness Middle-

man testified that the term "blank" signifies that "no manufacturing operations have been performed on that item at all, and it remains a blank until such time as manufacturing operations are performed." When asked what he meant by the term "manufactured", Mr. Middleman testified:

> A. An operation performed on these items [exhibits 1–A, 1–B and 1–C], or any one of these items, such as the slotting operation, it then is along a definite path; it is no longer considered a blank. [R. 16]

In *Webster's Third New International Dictionary*, Unabridged, 1968, at page 229, we find:

> blank * * * 5: having a plain or unbroken surface where an opening, finish, or other interruption of continuity is usual: as *a of a key* [italics quoted]; *not yet having had the slots made* [italics supplied.]

In the absence of supporting argument, it would appear that plaintiff's contention that the involved items are "blanks", has been abandoned.

Lexicographic authorities supply the following definitions of the term "tube":

*Webster's New World Dictionary*, College Edition, 1962:

> tube 1. a hollow cylinder or pipe of metal, glass, rubber, etc., *usually long in proportion to its diameter*, used for conveying fluids, etc. [Italics ours.]

*Webster's Third New International Dictionary*, Unabridged, 1968, page 2459:

> tube 1 a: a hollow elongated usu. cylindrical body that is used esp. to convey fluids and is mechanically nearly or precisely the same as a pipe but in use is arbitrarily associated with particular items and devices * * * .

*Funk & Wagnalls New Standard Dictionary of the English Language*, 1956 edition, page 2577:

> tube, n. 1. A long hollow cylindrical body, as of wood, metal, rubber, or glass, generally used for the conveyance of something through it, but often as a receptacle for holding something; a pipe.
>
> In most of their applications, there is no difference in sense between *tube* and pipe; generally, however, *tube* is used instead of *pipe* when the article referred to is not made of a rigid material, or when it is used as a receptacle and not as a conduit; as a rubber *tube* * * * .

Both parties to this controversy direct our attention to the holding of the court in *Keystone Brass & Rubber Co., Inc.* v. *United States*, 36 Cust. Ct. 424, Abstract 59897 (1956). The merchandise there under

consideration consisted of seamless brass tubes not less than 1³⁄₁₆ inches long and not more than 1⅝ inches in length. The merchandise was cylindrical in form, having an inside diameter of approximately one-half of one inch and an outside diameter of approximately five-eighths of one inch.

The tubes in the *Keystone* case, *supra*, were classified under paragraph 397 of the Tariff Act of 1930 as articles wholly or in chief value of metal, and were claimed to be dutiable under paragraph 381 of the Act as seamless brass tubes and tubing. Plaintiff therein cited certain lexicographic definitions in support of its claim. The court in the *Keystone* case, in holding that the merchandise there involved was properly classifiable as tubes or tubing stated, page 425:

> However, we have the unrefuted testimony of the sole witness, whose qualifications are not challenged, that the merchandise represented by exhibit 1 is purchased as a brass tube and that its eventual use is to convey water. Note *The Davis-Bilt Products Co.* v. *United States*, 28 Cust. Ct. 332, C.D. 1432, wherein so-called torus tubes were held to be steel tubes.

> Upon this record, therefore, we find and hold that the importations in controversy are embraced within the common meaning of the term "tubes" or "tubing" and that they should be classified within the provision for "seamless brass tubes and tubing" in paragraph 381, * * *.

The Government in this case (brief page 14) states that lexicographic authorities and certain court decisions indicate that "tubes" must be "long", "elongated", "long in proportion to its diameter." Defendant further points out that plaintiff's witnesses, Boehm and Johnson testified that exhibits 4 and 5—each of which exhibits contains some articles which are *short* and which have *diameters* exceeding their lengths—"are tubes." Defendant suggests that the testimony of plaintiff's witnesses in this regard should be ignored. However, it may be noted that the definition of "tube" in *Webster's New World Dictionary*, College Edition, *supra*, states: "*usually* long in proportion to its diameter." [Italics supplied.]

In the *Keystone* case, the Government also contended there as it does here, that the merchandise there involved was not "tube" or "tubing" on the ground that it was not long in proportion to its diameter. Despite this position of the Government, the court in the *Keystone* case held, as heretofore indicated, that the merchandise on the record therein was properly classifiable as "seamless brass tubes and tubing", as claimed. In our opinion, the contention of the defendant that the testimony of plaintiff's witnesses respecting exhibits 4 and 5 should be discounted, is without merit.

The defendant herein also contends that the involved items are not

tubes because they are not used in the manner in which tubes are used. In *Ball et al.* v. *United States*, 8 Ct. Cust. Appls. 143, T.D. 37271 (1917), the merchandise under consideration consisted of certain steel tubes measuring from about 5 to 10 feet long, with inside diameters varying according to the lengths from about an inch to 3 or 4 inches. The court noted that so far as form was concerned, the articles might be described as seamless tubes or pipes. The tubes therein were designed to be used, not as "tubes" but were employed as material for the manufacture of the inside and outside rings of ball bearings, called "ball races". The importer contended that the involved items were not tubes because they were not used for the purposes in which tubes are usually employed. Despite the fact that the articles in the *Ball* case, *supra*, were not used as conduits, they were held properly classifiable as finished steel tubes (paragraph 127, Tariff Act of 1913) rather than as "all steels * * *, containing alloys such as * * * chromium * * *" (paragraph 110, Tariff Act of 1913). In its decision, the court in the *Ball* case, stated:

> We think it can not be said that whether or not an article is a tube depends upon the use to which it is applied. Webster's definition which is fairly typical, recognizes "some other purpose" than as a conduit. The uses of steel tubes as material are so common and well known that in the absence of commercial designations we can not say the articles here are not steel tubes within the common understanding of that term. To formulate a definition of "tube" that would exclude them in this case would be to invite trouble in another. Their form clearly answers the call of the definition, and that is sufficient.

It would appear that the involved items satisfy the definition of "tubes" in Webster's (*Ball* case, *supra*) as being used for "some other purpose" (than as a conduit for conveyance of liquids or gases, etc.).

The cutting of the raw material—originally in lengths of 20 to 30 feet—did not, in our opinion, transform the items at bar into any specific article. As imported, the merchandise is a short tube used as material in further manufacture for ultimate use as "a connector to transfer electrical current." As pointed out in the *Ball* case:

> * * * It is well settled that the finished product of one process of manufacture may become the material of the next rank. * * *

Further, plaintiff's well-qualified witnesses testified that the articles of merchandise represented by exhibits 1–A, 1–B, and 1–C are "tubes". The witness Boehm specifically testifed that the imported items are tubes:

> A. Because they are manufactured from drawn tubes to a specification requested by a customer. They are products that could be sold in tubular form. We merely cut them to length for shipping and packaging purpose. [R. 32–33.]

Also, the testimony of plaintiff's witnesses is to the effect that the involved merchandise is known and sold as "tubes"; and that almost all of his company's products are manufactured in length the size of exhibits 1–A, 1–B, and 1–C, or smaller (R. 39). All of the witnesses testified that rectangular tubes are "tubes" as that term is used in the trade and commerce of the United States. See also Schedule 6, Part 2, Headnote 3(e), *supra.*

Defendant also maintains that there is a minimal length requirement in order for an item to be classified as a "tube". We find nothing in the cases to which our attention has been directed or in our research of legislative history which would indicate that there is a "minimal length requirement" in the determination of what constitutes a "tube". On the other hand, plaintiff's witness Boehm testified that based upon his experience, a "tube" does not have any length limitation (R. 33). Further, plaintiff's witness Johnson testified that his company manufactures merchandise like that represented by exhibits 1–A, 1–B, and 1–C ranging in lengths from 38 feet down to any length desired by a customer and that such merchandise is offered and sold as "rectangular copper tubing" (R. 42).

For all of the reasons heretofore stated, we are of the opinion that the involved items are within the common acceptation of the term "tubes" and, accordingly, that they are properly classifiable under item 613.02 of the Tariff Schedules of the United States at the rate of 5.2 cents per pound under the provision therein for "pipes and tubes and blanks therefor". The protests in this respect are sustained. Judgment will issue accordingly.