## United States *v.* Richter (No. 544).[1]

1. A MANUFACTURE MAY BE MATERIAL FOR ANOTHER MANUFACTURE.

Ordinarily a manufactured article takes a different form, or at least subserves a purpose different from that of the original materials out of which it is made and usually takes a different name.  That does not mean, however, that its usefulness as a material has necessarily ended and that as a manufacture it can not serve the purpose of material for some other manufacture.

2. MANUFACTURES OF FURS USED AS MATERIAL.

According to the evidence, the importation was of pieces of dressed natural sheepskin sewed into rugs and known to the trade as rugs.  It appears they are used as material for making finer rugs or other articles of fur.  They are further advanced than dressing and dyeing and were properly dutiable as manufactures of furs further advanced than dressing and dyeing under paragraph 439, tariff act of 1909.

### United States Court of Customs Appeals, May 31, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7122 (T. D. 31043).

[Reversed.]

*D. Frank Lloyd,* Assistant Attorney General (*Charles D. Lawrence* on the brief), for the United States.

*Brown & Gerry* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The collector of customs at the port of New York classified certain dressed sheepskins, sewed into rectangular shapes, 64 inches long by

---

[1] Reported in T. D. 31680 (20 Treas. Dec., 1267).

30 inches wide, as manufactures of fur, and assessed them for duty at 35 per cent ad valorem under paragraph 439 of the tariff act of August 5, 1909, which reads as follows:

439. Furs dressed on the skin, not advanced further than dyeing, but not repaired, twenty per centum ad valorem; manufactures of furs, further advanced than dressing and dyeing, when prepared for use as material, including plates, linings, and crosses, thirty-five per centum ad valorem; articles of wearing apparel of every description, partly or wholly manufactured, composed of or of which fur is the component material of chief value, fifty per centum ad valorem. Furs not on the skin, prepared for hatters' use, including fur skins carroted, twenty per centum ad valorem.

The importer objected to the classification and the duty assessed and among other grounds of protest set up that the goods were dutiable at 20 per cent ad valorem under paragraph 439 either as furs dressed on the skin, not repaired, and not advanced further than dyeing or at the same rate as partly manufactured articles not provided for under paragraph 480, the part of which relevant to the case reads as follows:

480. That there shall be levied, collected, and paid * * * on all articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

A majority of the Board of General Appraisers decided that the merchandise was unquestionably fashioned into the form of rugs and as such were manufactures of fur, but that they did not belong to the group of manufactures of furs described in that portion of the paragraph under which they were classified and assessed for duty, for the reason that they were not prepared for use as material. As there was no general provision for manufactures of fur in the tariff act of 1909, the majority of the board felt obliged to hold that the goods were dutiable at 20 per cent ad valorem, either as furs dressed on the skin or as nonenumerated manufactured articles. The minority of the board was of opinion that the importation was one of fur skins in the form of unfinished rugs temporarily sewn together for convenience in transportation and to guard against the inclusion of undersized or defective skins in the shipment; that the ultimate use of the unfinished rugs was the manufacture of carriage robes, the outside of fur garments, and similar purposes; that the so-called rugs had not been "prepared for use as materials, inasmuch as the flanks and defective skins have to be discarded, the skins matched, and then permanently sewn to fit them for such use," and that the goods were dutiable as furs dressed on the skin, not advanced further than dyeing, at 20 per cent ad valorem.

From the decision of the board the Government appealed.

The appraiser returned the merchandise as "pieces of dressed natural sheepskins which were sewed into rugs," dutiable as manufactures of fur. The evidence produced by the importer on the hearing was to the effect that the wares in question were dressed pieces of

sheepskin, sewed together in China in the form of rugs for convenient shipment and to give to the rugs a definite size, and that they were known to the trade as rugs. It appears that on arrival in this country such rugs are taken apart and the poor pieces, if any, cut out. The good pieces are rematched, if necessary, joined together by resewing, and either lined and formed anew into rugs or after resewing are converted into carriage robes, overcoats, or other things of that nature. One of the witnesses for the importer testified that the articles as imported can be used as rugs after resewing.

The goods in this case are made up of furs dressed on the skin and their nature is such that if dutiable at all under the provisions of paragraph 439 of the tariff act of 1909 they must fall within one of the following classes therein specified, namely:

(1) Furs dressed on the skin, not advanced further than dyeing, but not repaired, twenty per centum ad valorem; or

(2) Manufactures of furs, further advanced than dressing and dyeing, when prepared for use as material, including plates, linings, and crosses, thirty-five per centum ad valorem.

The importer contends, first, that they are not manufactures of furs; second, that they are not further advanced than dressing and dyeing; third, that they have not been prepared for use as material; and fourth, that they are not plates, linings, and crosses which are manufactures of fur.

In support of the first point counsel for appellants argue that the rugs are at best furs manufactured, and that within the principle laid down in Dejonge *v.* Magone (159 U. S., 562, 568) and Hartranft *v.* Wiegmann (121 U. S., 609, 615) they can not be regarded as manufactures of fur. The cases cited do hold that to constitute a manufacture the material must be converted into a new and different article having a name, character, or use distinct from that of the original substance subjected to manufacturing processes. It will be noted, however, that they do not go so far as to say that for a manufacture it is necessary that the original material should pass from its condition as a material into a finished article not destined as the material for something else. To so limit the meaning of "a manufacture" would bring about the odd result of making the language in paragraph 439, "manufactures of furs * * * when prepared for use as material" a contradiction of terms. Ordinarily a manufactured article takes a different form, or at least subserves a purpose different from the original materials out of which it is made and usually it takes a different name. Tidewater Oil Co. *v.* United States (171 U. S., 210, 216). That does not mean, however, that its usefulness as a material has necessarily ended and that as a manufacture it can not serve the purpose of material for some other manufacture. Iron ore is converted into iron; iron is turned into steel; and steel into thousands of articles of industrial usefulness. The iron is a manu-

facture of the ore, the steel a manufacture of the iron, and a watch spring a manufacture of the steel. "The finished product of one manufacture thus becomes the material of the next in rank." Tidewater Oil Co. v. United States (171 U. S., 210, 217). The goods in question are not mere pieces of dressed fur thrown together without purpose or design. The original furs dressed on the skin have been cut into pieces, not at random, but in pursuance of a definite result to be achieved. The sample shows that these pieces have been matched, that they have been fitted to place, and then sewed together into the definite form of an unlined rug. Although the basting or rough tacking of the pieces in place would have served the purpose of holding them together for mere convenience of transportation, the pieces are something more than basted and tacked together. The pieces of the sample are very firmly joined one to the other with strong thread, and the stitching can be considered temporary only in the sense that it is removed and a more effective style of stitch substituted. As imported the articles have all the appearance of rugs, and as a matter of fact bear that name in the trade. Indeed, if the sample may be considered fairly representative of the goods, they are serviceable as rugs as they stand, although it appears that they are to be used as material for making finer rugs or other articles of fur. That the sewing is not up to domestic standards, that the articles are ripped apart after importation, that they are resewed after removing poor pieces and rematching, that they are converted or may be converted into carriage robes or coats, does not alter the fact that the goods are actually rugs when they arrive and that the furs of which they are made have been advanced by processes of manufacture into a definite article which is something more than fur and which has achieved the dignity of another name. If the circumstances upon which counsel for the importer base the contention that the articles are not manufactures of fur were accepted as governing factors in reaching a classification of the merchandise, it would seem that the character of an importation is to be determined not by its nature and form when imported but by the quality of workmanship and by the processes of manufacture to which it is subjected after it arrives. With such a rule of tariff construction finally established it is just a bit difficult to see how a poorly sewed, poorly fitted silk dress, ornamented with badly selected silk laces, could be classified as wearing apparel should the importer satisfactorily prove that it was the custom to rip out the deficient sewing and either resew it into a better-fitted dress with more appropriate laces or utilize the materials for some other confection. We are unwilling to depart from the general rule that the condition of goods at the time of importation is the condition which determines their classification for tariff purposes, and therefore we are inclined to uphold the finding of the majority of the board

that the rugs are manufactures of fur in the sense that out of the furs a new article has been evolved with a different name and a use for which the original fur skin unprocessed was not commercially available, but not in the sense, however, that as such manufactures of fur their commercial usefulness for the making of some other article has ended.

But are the rugs manufactures of fur *prepared for use as material?* That they are suitable as material for the making of lined rugs, carriage robes, and fur coats, and are chiefly used for that purpose, seems to be established by the two witnesses produced on the hearing, both of whom testified on behalf of the importer. It is contended, however, that the goods are not *prepared for use as material;* that whatever preparation the ·merchandise has received has been given wholly for convenience in transportation, and that the articles must be taken apart, poor pieces cut out, and the good ones rematched and resewed before they can be used for making rugs or anything else. We think the contention is a little broader than is justified by the whole evidence. The rugs are taken apart and they are resewn, but poor pieces are not always found, and neither is it always necessary to rematch the pieces, although in many cases such a course is pursued. The sample received in evidence is that of a rug much more strongly sewed than mere convenience of transportation required. The pieces composing it seem to be well matched and if some of them are poor in quality that fact is not disclosed by the evidence. Neither is it apparent to the eye of the layman; but whether the original sewing is removed and the pieces, without changing their relative position, are resewed into a better-stitched rug, or whether the pieces are rematched and resewed into a better-matched and a better-stitched rug, or whether poor pieces are replaced by others of better grade and resewed with those remaining into a better quality of rug, or whether the piec s are made up into a carriage robe or other articles, the fact remains that the components of the rugs as they came into the country were not promiscuous bits of dressed fur, but parts of a whole, cut to shape, fitted one to the other, joined together into a definite article, namely, a rug, which can be and is used in the trade as material to make better rugs. We do not think that either the evidence or the sample justifies us in inferring that the constituent parts of the rug are so badly matched and so mixed in grade that they have been sewed together as pieces of waste or refuse fur. Inferior pieces and poorly matched pieces may be and are in many cases found, but that condition affects the quality of the article and not its status as a rug or its availability as material prepared in some degree for lined rugs or for carriage robes, which do not differ substantially from rugs.

The goods which are the subject of this appeal are made of dressed fur skins which have not been dyed, and the point is made that they

are not further advanced than dressing and dyeing. We think that the phrase "further advanced than dressing and dyeing," as used in paragraph 439, was intended to mark a step in the process of manufacture, and that whether furs have been so advanced is to be determined not by whether they have been actually dressed and dyed, but by whether they have passed beyond the dressing and dyeing stage in their manufacture. Furs may be and are made up into articles without dyeing them at all, in which case it would seem that they had gone beyond the dressing and dyeing period of their development. As already indicated, the furs utilized in making the rugs under consideration have lost their identity as mere furs. By processes of manufacture they have become articles of fur, namely, rugs, and are therefore, in our opinion, "manufactures of furs further advanced than dressing and dyeing."

The decision of the Board of General Appraisers is *reversed*.