## WILKES-BARRE LACE MFG. CO. *v.* UNITED STATES (No. 2226).[1]

**1. COTTON YARN—MANUFACTURES.**

Cotton yarn, to be used for making lace curtains, is a manufacture of cotton within the meaning of paragraph 16, emergency tariff act of 1921; and this is not affected by proof that such yarn wastes 20 per cent in manufacture and has to be "conditioned" by keeping in a damp room for two or three days before using.

**2. RELATIVE SPECIFICITY.**

There is no competition between paragraph 250, tariff act of 1913, providing for cotton thread and yarn, and paragraph 17, emergency tariff act of 1921, providing for certain manufactures of cotton; and the question of relative specificity does not arise in their construction and application.

**3. CONSTRUCTION, PARAGRAPHS 16 AND 17, EMERGENCY TARIFF ACT OF 1921.**

By paragraphs 16 and 17, emergency tariff act of 1921, Congress intended to levy an additional duty of 7 cents per pound on long-staple cotton, whether it came in raw or in the manufactured state, and, so far as these paragraphs are concerned, the degree of its manufacture can make but little difference.

**4. LONG-STAPLE COTTON YARN.**

Paragraph 16, emergency tariff act of 1921, levies a duty of 7 cents per pound on cotton having a staple of 1¾ inches or more in length, and paragraph 17 levies the same duty upon manufactures of such cotton. Yarn made of such cotton, imported for use in making lace and dutiable under paragraph 250, tariff act of 1913, is dutiable also under paragraph 17 of the emergency act.

United States Court of Customs Appeals, May 24, 1923.

APPEAL from Board of United States General Appraisers, G. A. 8588 (T. D. 39366).

[Affirmed.]

*Walter Evans Hampton* for appellant.
*William W. Hoppin,* Assistant Attorney General (*Harry M. Farrell,* special attorney, of counsel), for the United States.

[Oral argument March 20, 1923, by Mr. Hampton and Mr. Hoppin.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

BLAND, Judge, delivered the opinion of the court:

Appellants imported cotton yarn which was admitted to have been made of cotton having a staple of 1¾ inches or more in length. It

---

1 T. D. 39664.

was exclusively used in lace-curtain making. The yarn was in skeins packed in bales of 500 pounds each. The testimony shows that before using the yarn for the manufacture of lace curtains it is conditioned or aged by putting it in a damp room for two or three days, and that in the course of the operations in weaving it into curtains a loss is sustained of 20 per cent, the loss arising from the waste from the bobbins when the yarn has run down to a length where the tension does not allow the making of a perfect lace.

The merchandise was assessed for duty as cotton yarn under paragraph 250 of the tariff act of 1913, and in addition thereto a duty of 7 cents per pound was added under paragraph 17 of the emergency tariff act of May 27, 1921.

The issue in the case is whether the merchandise was properly subject to the additional duty of 7 cents under the emergency tariff act.

The sections of the statute applicable are as follows (par. 250 of the tariff act of Oct. 3, 1913):

Cotton thread and carded yarn, warps, or warp yarn, whether on beams or in bundles, skeins, or cops, or in any other form, not combed, bleached, dyed, mercerized, or colored, except spool thread of cotton, crochet, darning and embroidery cottons hereinafter provided for, shall be subject to the following rates of duty: * * *

Title I, paragraphs 16 and 17, of the emergency tariff act:

Par. 16. Cotton having a staple of 1⅜ inches or more in length, 7 cents per pound.

Par. 17. Manufactures of which cotton of the kind provided for in paragraph 16 is the component material of chief value, 7 cents per pound, in addition to the rates of duty imposed thereon by existing law.

It is the contention of appellant that the sections of the two statutes in question are in competition, and that since "cotton yarn" is provided for eo nomine in the act of 1913, the general provision "manufactures of which cotton of the kind provided for in paragraph 16 is the component material of chief value." in the emergency act can not affect it, and that therefore no additional duty can be levied under the later act because of the rule of relative specificness applying to competing paragraphs.

The first question to determine is, Is the cotton yarn in controversy a manufacture of which cotton of the kind provided for in paragraph 16 is the component material of chief value? That it is composed of cotton having a staple of 1⅜ inches in length is admitted, and that the cotton yarn in controversy is such a "manufacture" seems too clear for prolonged discussion. It was a completed yarn manufactured from raw cotton. Not only can it be said that it had passed through a manufacturing process, but that it had been completely manufactured into yarn. Subsequent conditioning or use or waste can not change the fact that when it was entered for duty it was a manufacture of cotton. Tidewater Oil Co. v. United States (171 U. S. 210); United States v. Richter (2 Ct. Cust. Appls. 167; T. D. 31680).

In the Tidewater case the court said:

Raw materials may be and often are subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product. Thus, logs are first manufactured into boards, planks, joists, scantlings, etc., and then by entirely different processes are fashioned into boxes, furniture, doors, window sashes, trimmings, and the thousand and one articles manufactured wholly or in part of wood. The steel spring of a watch is made ultimately from iron ore, but by a large number of processes or transformations, each successive step in which is a distinct process of manufacture and for which the article so manufactured receives a different name.

The material of which each manufacture is formed, and to which reference is made in section 3019, is not necessarily the original raw material—in this case the tree or log—but the product of a prior manufacture; the finished product of one manufacture thus becoming the material of the next in rank. This case, then, resolves itself into the question whether the materials out of which these boxes were constructed were the boards which were manufactured in Canada or the shooks which were imported into the United States (pp. 216–217).

The court in United States *v.* Richter, supra, said:

In support of the first point counsel for appellants argue that the rugs are at best furs manufactured, and that within the principle laid down in Dejonge *v.* Magone (159 U. S. 562, 568) and Hartranft *v.* Wiegmann (121 U. S. 609, 615) they can not be regarded as manufactures of fur. The cases cited do hold that to constitute a manufacture the material must be converted into a new and different article having a name, character, or use distinct from that of the original substance subjected to manufacturing processes. It will be noted, however, that they do not go so far as to say that for a manufacture it is necessary that the original material should pass from its condition as a material into a finished article not destined as the material for something else. To so limit the meaning of a manufacture would bring about the odd result of making the language in paragraph 439, "manufactures of furs  *  *  * when prepared for use as material," a contradiction of terms. Ordinarily a manufactured article takes a different form, or at least subserves a purpose different from the original materials out of which it is made, and usually it takes a different name. Tidewater Oil Co. *v.* United States (171 U. S. 210, 216). That does not mean, however, that its usefulness as a material has necessarily ended, and that as a manufacture it can not serve the purposes of material for some other manufacture. Iron ore is converted into iron; iron is turned into steel; and steel into thousands of articles of industrial usefulness. The iron is a manufacture of the ore, the steel is a manufacture of the iron, and a watch-spring a manufacture of the steel. "The finished product of one manufacture thus becomes the material of the next in rank." Tidewater Oil Co. *v.* United States (171 U. S. 210, 217).

On this point the board in this case properly said:

The yarn is variously invoiced as curtain bobbin yarn carded, curtain bobbin yarn combed, gray cotton yarn, and gray cotton yarn carded, not combed, colored, bleached, or dyed. So that unless the invoice descriptions are incorrect, they unquestionably show that the merchandise has been subjected to at least two processes of manufacture, namely, combing or carding, and spinning. We are unpersuaded, therefore, that the merchandise is anything different in character from the ordinary cotton yarn of commerce, which, in our opinion, is a manufacture of cotton, taking a different form and a different name from the original raw material out of which it was made, although thereby becoming material for some other or further manufacture. Ball *v.* United States (8 Ct. Cust. Appls. 143); Tidewater Oil Co. *v.* United States (171 U. S. 210); United States *v.* Richter (2 Ct. Cust. Appls. 167). That

cotton yarn was evidently considered by Congress as a manufacture of cotton under the tariff act of 1913 we think is clearly manifested by the title heading reading "Schedule I—Cotton Manufactures," enumerating and fixing different rates of duty on various articles or *manufactures* of cotton or in chief value of cotton, and providing eo nomine in paragraph 250 for cotton carded yarn and cotton combed yarn, etc., all of which provisions are distinguished from the provision for raw cotton in paragraph 467 of the free list of that act.

We do not think further citation or comment necessary on this phase of the case.

Paragraph 17 of the emergency act is not in competition with paragraph 250 of the act of 1913 in such a way as to invoke the rule of relative specificity with the result contended for by the appellant for the reason that the later act imposes a duty *in addition to the rates imposed by existing law* in language which is an enumeration of all the kinds of manufactures of which cotton, of the kind provided for, is the component material of chief value mentioned in the act of 1913 and covers both general and specific provisions therein.

The eo nomine provision for cotton yarn in paragraph 250 of the act of 1913 is but one of many kinds of merchandise under the title "Manufactures of cotton," while the emergency act omits to enumerate any of them, but covers them all by levying an additional duty of 7 cents per pound on cotton having a staple of $1\frac{3}{8}$ inches or more in length, and also a similar duty per pound on manufactures of which cotton *of the kind* is the component material of chief value. Congress clearly intended, in the emergency, to levy a duty of 7 cents per pound on long-staple cotton whether it came in raw or in the manufactured state, and the degree of its manufacture can make little difference for the purposes of the case.

The importer relies upon the case of Chew Hing Lung v. Wise, collector (176 U. S. 156), where the court announced the well-settled rule that the designation of an article eo nomine, either for duty or as exempt from duty, must prevail over words of a general description which might otherwise include the article specifically designated. In that case the question was to choose between two competing sections of the same law, and the eo nomine provision of course controlled, but in the case at bar the correctness of the assessment under the eo nomine clause "cotton yarn" in the act of 1913 is not questioned, and the subsequent act, by a general provision, clearly intended to levy an additional duty on all manufactures of cotton *of the kind*, no matter in what language it may be referred to in the act of 1913.

The case of Movius v. Arthur (95 U. S. 144) is not in point. The court there held that the act of 1872 did not change the duty provided for in prior acts, but the act of 1872 did not by its general terms cover and enumerate the items covered by the former acts as the emergency act does in the case at bar. No contention is made

that the act of 1921 repeals the act of 1913, nor does it change the classification or comparative rates of duties in the said act, but it, leaving them as they are, adds 7 cents per pound to them if they are composed of long-staple cotton.

The other cases cited by appellant support the oft-repeated principle that general terms must give way to specific ones, but do not in any sense bear upon the facts in this case.

The decision of the Board of General Appraisers is *affirmed.*