(C. D. 117)

GIBSON-THOMSEN CO., INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided March 7, 1939)

*James W. Bevans* for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Daniel G. McGrath*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is a suit against the United States, arising at the port of New York, in which the plaintiff seeks to secure the release of his merchandise from warehouse. The collector of customs refused to release the goods on the ground that the articles were not legally marked. The protest reads as follows:

Protest is hereby made, under Paragraph 514 of the Tariff Act of 1930, against your decision of November 17, 1938, excluding from delivery two cases of brush blocks and brush handles (#1992 and #2003) imported by GIBSON-THOMSEN Co., INC.

It is our contention that the brush blocks and brush handles contained in the said importation are marked in a conspicuous place, as legibly, indelibly, and permanently as the nature of the article will permit, in such manner as to indicate to an ultimate purchaser in the United States, the English name of the country of origin of such article.

We find no requirement in Section 304 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, that the name of the country of origin shall be so placed that it shall remain when the imported article is used in the United States in the manufacture of a new article, with a new name, character, and use.

It is requested that this protest be transmitted to the United States Customs Court, together with our request of November 17, 1938 for delivery, and the attached withdrawal papers.

A warehouse entry, dated October 27, 1938, covering certain wood brush blocks and celluloid tooth brush handles appears among the papers forwarded by the collector. The record contains copies of correspondence showing that on November 17, 1938, the importer, through its attorney, filed a letter with the collector enclosing withdrawal papers covering one case of brush blocks and one case of tooth brush handles and tendered the duty therefor, claiming that the

merchandise was properly marked. On November 17, 1938, the collector replied advising that the merchandise could not be released unless it was properly marked. The following excerpt from the collector's reply gives the reason why the marking on the merchandise was considered not sufficient:

The appraiser of merchandise advised this office that the shipment was not legally marked since the handles and blocks are not marked on an integral part in a reasonably conspicuous place where the marking is not likely to be defaced, destroyed, removed, altered, covered, obscured, or obliterated by treatment or use made of these articles before they reach the ultimate purchaser. Accordingly, the shipment is not properly marked to comply with the provisions of article 528 (4) of the Customs Regulations of 1937, as amended by T. D. 49658.

The notations made by the appraiser in red ink on the invoice with respect to the wood brush blocks in case 1992 and the celluloid tooth brush handles in case 2003 were specially moved in evidence and received without objection. The notations read as follows:

Wood Blocks marked Japan on face where bristles are to be inserted. Such marking formerly accepted.

Marked "Japan" where bristles are to be inserted. Such marking formerly accepted.

A sample from each case, in the condition as imported, was admitted in evidence. The celluloid tooth brush handle was marked Exhibit 1 and the wood brush block was marked Exhibit 2. Each exhibit is marked with the word "Japan" by a stamping or die-sinking process on the face of the handle or block intended for the insertion of the bristles.

The question for decision is whether the merchandise was legally marked within the meaning of section 304 of the Tariff Act of 1930, as amended by section 3 of the Customs Administrative Act of 1938, enacted on June 25, 1938, for, if the articles were legally marked, the collector would not be justified in refusing delivery thereof upon payment of the lawful duty. The pertinent parts of section 3 of the Customs Administrative Act of 1938 read as follows:

(a) MARKING OF ARTICLES.—Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

(1) Determine the character of words and phrases or abbreviations thereof which shall be acceptable as indicating the country of origin and prescribe any reasonable method of marking, whether by printing, stenciling, stamping, branding, labeling, or by any other reasonable method, and a conspicuous place on the article (or container) where the marking shall appear;

(2) Require the addition of any other words or symbols which may be appropriate to prevent deception or mistake as to the origin of the article or as to

the origin of any other article with which such imported article is usually combined subsequent to importation but before delivery to an ultimate purchaser; and

(3) Authorize the exception of any article from the requirements of marking if—
[specification of reasons follows].

George S. Gibson, a member of the importing firm, testified that his company does not sell at present merchandise like Exhibits 1 and 2 in the condition as imported but that the articles are used by his firm in the manufacture of tooth brushes and military hair brushes; that formerly he had sold the articles in the condition as imported; that the first process used on the tooth brush handles like Exhibit 1 is to bore holes for the bristles; that the bristles are then inserted in the holes and fastened in with wire, after which the bristles are trimmed three different ways and the handles are polished, stamped, and packed in suitable containers; that the cost of the handles would be about 30 per centum of the value of the finished tooth brush, the cost of the bristles would be 40 per centum, the cost of the labor would be 20 per centum, and the cost of the wire, boxing, packing and other expenses would be 10 per centum. Samples representing each stage of manufacture were admitted in evidence and marked Illustrative Exhibits B, C, D, E, and F and the finished tooth brush was marked Illustrative Exhibit A. A sample of bristles used in making the brushes was marked Illustrative Exhibit G.

The witness testified also with respect to the operations in making hair brushes from the wood brush blocks, Exhibit 2. It appears that they are processed similarly to the tooth brush handles. Exhibits showing a wooden block which had holes drilled therein, one partly filled with bristles and a completed brush, were admitted in evidence and marked Illustrative Exhibits H, I, and J. On cross-examination the witness was asked if the word "Japan" was visible on the finished hair brush, Illustrative Exhibit J, and he admitted that only the first three letters of the word could be distinguished when the bristles were pulled aside, and that the word might have been stamped on other portions of the brush block not intended for the insertion of the bristles; that the legend "Block made in Japan" might have been used on the wood brush block and the words "Handle made in Japan" might have been stamped on the tooth brush handles.

George Dickely of the firm of I. Sekine Co., Inc., was called as a witness by the plaintiff and testified substantially the same as Mr. Gibson with respect to the uses of Exhibits 1 and 2, except that in addition to making brushes his firm sells to other manufacturers tooth brush handles like Exhibit 1 and wood brush blocks similar to Exhibit 2 in the condition as imported. The wood brush blocks which he handles are smaller than Exhibit 2 and are used by his firm for making hand brushes. He expressed the opinion that the proportional value of the wooden block would be about 20 per centum

of the value of the completed brush and that the bristles were more valuable than any other component in the brush.

The report of the collector in answer to the protest intimates that the marking found on the tooth brush holders and wood brush blocks at the time of importation is not in compliance with the following portion of paragraph (e) of article 528 of the Customs Regulations of 1937, as amended in T. D. 49658, reading as follows:

(e) * * * Articles (or containers) subject to marking to indicate the country of origin should be marked on an integral part in a reasonably conspicuous place where the marking is not likely to be defaced, destroyed, removed, altered, covered, obscured, or obliterated by the treatment or use made of the article (or container) before it reaches the ultimate purchaser.

An inspection of Exhibits 1 and 2, together with the illustrative exhibits, is sufficient to show that the marking on the imported articles is not placed on an integral part of the exhibits where the marking is not likely to be defaced, destroyed, removed, altered, covered, obscured, or obliterated by a process of manufacturing brushes from these articles. It is manifest, therefore, that the main question for discussion is whether the marking on the articles herein involved is in conflict with the provisions of the regulation, and, if so, whether the regulation is reasonable and within the power of the Secretary of the Treasury under the authority given to make regulations in section 3 of the Customs Administrative Act of 1938.

The making of tooth brushes and hair brushes by using the tooth brush handles and the wood brush blocks herein involved as a base in which the bristles are inserted is a manufacturing process and the completed articles are manufactures of the United States, citing *Tide Water Oil Co.* v. *United States*, 171 U. S. 210; *United States* v. *Richter*, 2 Ct. Cust. Appls. 167, T. D. 31680; *Adolphe Schwob, Inc.* v. *United States*, T. D. 45908, affirmed in *United States* v. *Adolphe Schwob, Inc.*, 21 C. C. P. A. 116, T. D. 46447. If the regulation requires that the name of the country of origin must appear on materials used in the manufacture of other articles in the United States in such a position that it will be visible on the completed article, we are of opinion that the regulation is unreasonable. Such a mark shown on a finished brush made from the materials in this case would be misleading as it would give the purchaser the impression that the brush was made in Japan, whereas it was made in the United States from a combination of materials imported from Japan and from other countries, and including one material, wire, made in the United States.

Counsel for the defendant brought out on cross-examination that Exhibit 1 might have been stamped in a conspicuous place with the words "Handle made in Japan" and that Exhibit 2 might have been stamped "Block made in Japan." Of course such a marking when found on a completed brush would not be misleading but counsel points

out in his brief that the customs regulations do not require such a detailed marking. The regulation directing a comparable marking on imported merchandise, prescribed under the authority of section 3 of the Customs Administrative Act of 1938 above quoted, is article 528 (h) of the Customs Regulations of 1937, as amended in T. D. 49658, reading as follows:

When an imported article is of a kind which is usually combined with another article subsequent to importation but before delivery to an ultimate purchaser, the marking to indicate the country of origin shall include words or symbols which will clearly show that the origin indicated is that of the imported article only and not that of any other article with which the imported article may be combined subsequent to importation. For example, bottles or drums imported empty to be filled in the United States shall be marked with some such words as "bottle (or drum) made in (name of country)." This regulation shall not apply to articles of a kind which are ordinarily so substantially changed in this country that the articles themselves become products of the United States.

It is manifest that this regulation was not intended to cover materials, such as the articles herein involved, used in the manufacture of American products. The distinction is clearly set forth in a subsequent regulation published in T. D. 49715, reading as follows:

Article 528 (h) in its present form applies only when an imported article is of a kind which is usually combined with another article subsequent to importation but before delivery to an ultimate purchaser in a manner which does not result in an article manufactured or produced in the United States. The phrase "combined with another article," as used in article 528 (h), refers to a combining of an imported article with another article without any process of manufacture or production and in such a manner that their separate identities are maintained and they do not become integral parts of an article manufactured or produced in the United States. *Imported watch movements and toothbrush handles, for example, are not within the purview of the article,* whereas bottles or other containers imported empty to be filled are within its purview. [Italics not quoted.]

Counsel for the plaintiff points out in his brief that criticisms were made of section 304 (a) (2) before the Committee on Ways and Means of the House and the Committee on Finance of the Senate when H. R. 8099 was under consideration by those committees, claiming that the language used would require that importers mark materials used for the manufacture of other articles in such manner that the marking would be visible on the new manufactured article and suggested that the following provision be added:

*Provided,* That this subdivision shall not be applicable where there is produced in the United States with the use of the imported article, a manufactured article having a new name, character or use. (Pages 70 and 71, hearings on H. R. 8099.)

Counsel explains that this proposed proviso was not adopted. stating in his brief:

The adoption of this proviso was not insisted upon because of the very definite statements of the Treasury Department that the use of the word "combined" in the proposed new paragraph was not intended to apply in any case where there

was an actual manufacture. It is only fair to state that the Treasury Department has thus far adhered to this statement of the scope of this new provision.

Counsel evidently refers, in the last sentence, to the provision in the regulation published in T. D. 49715 reading,

\* \* \* The phrase "combined with another article," as used in article 528 (h), refers to a combining of an imported article with another article *without any process of manufacture or production* and in such a manner that their separate identities are maintained *and they do not become integral parts of an article manufactured or produced in the United States.* \* \* \* [Italics ours.]

It does not seem possible that the Secretary of the Treasury would establish a policy of not causing materials used in the manufacture of other articles to be marked so that the marking would always be visible in one section and intend a totally opposite policy in a parallel section. However, the collector did not consider this agreement before the congressional committee as to section 304 (a) (2), and the regulations thereunder, applicable to section 304 (a) (1), for he now demands that the marking on a material be in such a position that it will be visible when another article is made therefrom and the question arises whether Congress intended that this same marking rule should apply under section 304 (a) (1) which the representatives of the Treasury Department expressly stated to the congressional committees was not intended by the language used in section 304 (a) (2).

Counsel for the defendant argues in his brief that since section 304 (a) specifies that the marking shall be "in such manner as to indicate to an *ultimate purchaser* in the United States" the country of origin of merchandise, Congress intended that the marking on materials should be sufficient to notify the retail purchaser of an article manufactured in the United States that a portion of that manufactured article originated in a foreign country, that is, that the words "ultimate purchaser" means "retail purchaser."

Counsel for the plaintiff contends in his brief that the language used in section 304 (a) means no more than that found in correlative provisions of the previous acts; that the provisions in the previous acts were sufficient to indicate an intent to provide that the marking should be sufficient to inform not only the ultimate but all purchasers of the name of the country of origin of the goods; and that the court had construed the statute to require the articles to be marked in such manner that the marking would remain as long only as the imported article was used in commerce as such, citing *A. L. Randall Co.* v. *United States,* 48 Treas. Dec. 739, Abstract 50372, *Lagerdorf Trading Co.* v. *United States,* 48 Treas. Dec. 737, Abstract 50370, and *Fairfax Textile Mills, Inc.* v. *United States,* 48 Treas. Dec. 824, Abstract 50813. In the latter decision, the court said:

The tariff law deals with merchandise in the shape in which imported. To sustain the contention of the importer in this case would render it unnecessary

and illegal for any raw material imported to bear an indication of the country of production. That cannot be the intention of the law. When raw materials are imported they should bear an indication of the country of production so conspicuously and indelibly as to remain so until the character of the merchandise after importation is changed by subsequent operations and ceases to be itself, the original article of commerce.

The weakness of the defendant's contention is apparent when we follow the principle to the extreme. A manufacturer might make an article in the United States using materials imported from three or four different countries, and, if the defendant's contention should obtain, the manufacturer would be compelled to have each of the materials so marked that the name of the country of production thereof would appear on the finished article. In such case an article manufactured in the United States would bear the marking legend of three or four countries. It is manifest that such confusion of markings could not have been intended.

In an endeavor to show the meaning of the words "ultimate purchaser," counsel for defendant quotes from the hearings on the bill before the committees of Congress and from report No. 1465 of the Committee on Finance of the United States Senate. We have examined the matter quoted and find no explanation of the intended meaning of the words "ultimate purchaser." The words were used in the same manner as in the enacted law.

We are of opinion that the words "ultimate purchaser in the United States" used in the statute mean "ultimate purchaser of the imported article." An article loses its identity as soon as a new and different article is made therefrom and the ultimate purchaser of the new article is not the ultimate purchaser of the imported material within the tariff sense.

The regulations in article 528 (e) of the Customs Regulations of 1937, as amended in T. D. 49658, upon which the collector relies, relate to marking which may be defaced, destroyed, etc., "before it reaches the ultimate purchaser." Exhibits 1 and 2 are marked with the name of the country of origin sufficiently to inform the manufacturer who imported them, or any other manufacturer to whom they might be subsequently sold, of the origin thereof. As the manufacturer would be the "ultimate purchaser" of the imported article, it is manifest that the marking on the imported articles is not in conflict with the regulation. We hold that the articles herein involved are legally marked. The protest is sustained. Judgment will be entered in favor of the plaintiff.