(C.D. 2190)

Grafton Spools, Ltd. *v.* United States

United States Customs Court, Third Division

(Decided July 6, 1960)

*Barnes, Richardson & Colburn* (*James F. Donnelly* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General ·(*Richard E. FitzGibbon,* trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

DONLON, Judge: The merchandise in suit consists of empty ribbon spools, imported from England, in 13 cases on December 21, 1959. The cases in which the spools were shipped were clearly marked to show England as the country of origin, but the empty ribbon spools were not individually so marked. Under section 304 of the Tariff Act of 1930, as amended, the New York collector refused to release the merchandise to plaintiff, on the ground that it was not marked as required.

Plaintiff claims that marking on the cases in which the spools were shipped satisfies the statutory requirement (section 304(a) 3(A)(B) (C)(D)(H) and (K), as amended) and that, on the facts of the case, there is no requirement that each spool shall be marked.

Section 304, as amended, insofar as pertinent, provides as follows:

SEC. 304. MARKING OF IMPORTED ARTICLES AND CONTAINERS.

(a) MARKING OF ARTICLES.—Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

    \*       \*       \*       \*       \*       \*       \*

(2) Require the addition of any other words or symbols which may be appropriate to prevent deception or mistake as to the origin of the article or as to the origin of any other article with which such imported article is usually combined subsequent to importation but before delivery to an ultimate purchaser; and

(3) Authorize the exception of any article from the requirements of marking if—

    (A) Such article is incapable of being marked;

    (B) Such article cannot be marked prior to shipment to the United States without injury;

    (C) Such article cannot be marked prior to shipment to the United States, except at an expense economically prohibitive of its importation;

    (D) The marking of a container of such article will reasonably indicate the origin of such article;

    \*       \*       \*       \*       \*       \*       \*

    (H) An ultimate purchaser, by reason of the character of such article or by reason of the circumstances of its importation, must necessarily know the country of origin of such article even though it is not marked to indicate its origin;

    \*       \*       \*       \*       \*       \*       \*

    (K) Such article cannot be marked after importation except at an expense which is economically prohibitive, and the failure to mark the article before importation was not due to any purpose of the importer, producer, seller, or shipper to avoid compliance with this section.

(b) MARKING OF CONTAINERS.—Whenever an article is excepted under subdivision (3) of subsection (a) of this section from the requirements of marking, the immediate container, if any, of such article, or such other container or containers of such article as may be prescribed by the Secretary of the Treasury, shall be marked in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of such article, subject to all provisions of this section, including the same exceptions as are applicable to articles under subdivision (3) of subsection (a). If articles are excepted from marking requirements under clause (F), (G), or (H) of subdivision (3) of subsection (a) of this section, their usual containers shall not be subject to the marking requirements of this section. Usual containers in use as such at the time of importation shall in no case be required to be marked to show the country of their own origin.

    \*       \*       \*       \*       \*       \*       \*       \*

(d) DELIVERY WITHHELD UNTIL MARKED.—No imported article held in customs custody for inspection, examination, or appraisement shall be delivered until such article and every other article of the importation (or their containers), whether or not released from customs custody, shall have been marked in accordance with the requirements of this section or until the amount of duty estimated to be payable under subsection (c) of this section has been deposited. Nothing in this section shall be construed as excepting any article (or its container) from the particular requirements of marking provided for in any other provision of law.

The requirement that machine spools shall be permanently marked with the country of origin on the outside flange, in a conspicuous manner, appears to date back to October 15, 1934, when the Bureau of Customs announced a change of administrative practice pursuant to which such marking has since been required. T.D. 47292(2).

So far as research discloses, that ruling went unchallenged until 1955. Plaintiff, in that year, asked for an administrative review of the requirement that individual spools be marked. On August 12, 1955, the Bureau decided against plaintiff's contention (which the collector at New York had supported), ruling that an American manufacturer of ribbons which are wound on imported empty spools is not to be considered the ultimate purchaser of the spools, and hence that each spool should be marked clearly with the name of the country of origin.

On March 7, 1956, plaintiff's counsel requested Bureau review of this decision of August 12, 1955. Under date of November 5, 1956, the Bureau reaffirmed the ruling. The basis of reaffirmance is stated in a letter of D. B. Strubinger, Acting Commissioner of Customs (plaintiff's exhibit 3), as follows:

Before a determination can be made as to whether the imported spools which are to be wound with business machine ribbons are entitled to an exception under (D) or (H) above, it is necessary to determine whether the ribbon winder is the ultimate purchaser within the contemplation of the act, as amended. If an imported article is to be used in the United States in the manufacture of an article having a name, character, or use differing from that of the imported article, the principle of the case of *United States v. Gibson-Thomsen Co., Inc.* (C.A.D. 98) will apply to such imported article. Under this principle, the manufacturer or processor in the United States who will convert or combine the imported article into the different article will be considered the "ultimate purchaser" of the imported article within the contemplation of section 304(a) of the act, as amended.

The first question we are to decide, on the record before us, is whether the ultimate purchaser of these imported empty machine spools is (a) the manufacturer of business machines who buys the spools and (b) the manufacturer of machine ribbons who buys the spools. If we hold that such buyers are not the "ultimate purchasers," within the purview of section 304, then we shall also have to decide whether, within the purview of subparagraph (C), *supra*, these spools could not

be marked prior to importation, except at an expense economically prohibitive of importation.

The official papers are in evidence. While the merchandise has not yet been classified, for whatever it may be worth, it is noted in the papers that the appraiser has advisorily classified some of this merchandise as parts of adding machines, not specially provided for, under paragraph 372; some as parts of adding machines with electric motors and articles having as an essential feature an electric element or device, under paragraph 353; and the balance of the spools as articles in chief value of steel, not specially provided for, under paragraph 397, as modified.

There are 13 different types of machine spools included in the merchandise of this importation. Samples of all 13 types were introduced into evidence. (Plaintiff's collective exhibit 1.)

It was stipulated that each of the cases in which the spools were packed, as identified in the protest entry, were clearly marked to show that the country of origin of the contents is England; that if and when they are imported, upon release by the collector, the empty machine spools will be delivered in the original cases, so marked, to American purchasers of the spools who are either manufacturers of business machines or manufacturers of ribbons for use in such machines; and that such manufacturers of business machines incorporate at least one empty spool and at least one spool on which a ribbon has been wound, into each machine they sell. (R. 4, 5.) It was not stipulated that such manufacturers of machine ribbons wind on the empty spools ribbons which they manufacture and sell, but there seems to be tacit concurrence of counsel that this is the fact. Indeed, it may be implicit in the stipulation that spools are sold to manufacturers of ribbons for use in business machines.

There is much testimony on the issue as to whether or not it is possible to mark the individual spools only at an expense economically prohibitive of their importation. Since this question has no relevance, under existing law provisions, as to spools sold in adequately marked containers to business machine manufacturers or to ribbon manufacturers *provided* they are the ultimate purchasers of such spools within the statutory provision, we proceed first to decide that issue as to each of these two classes of buyers.

It is defendant's contention that, on the facts that have been stipulated, neither the manufacturers of business machines nor the ribbon manufacturers are "ultimate purchasers" of the imported empty spools. Defendant argues that it is the purchaser of each business machine, who *uses* the machine and all of its parts including the spool and the ribbon that has been wound on the spool, who is the "ultimate purchaser" of the imported empty spools.

There is nothing in the record to indicate that a complete business machine is sold by any manufacturer other than as an entity. If there are instances where sale is of separately itemized parts, two of which are (a) a spool and (b) a ribbon wound on the spool, this fact is not shown.

That the purchaser of the business machine may be, and doubtless usually is, the ultimate *user* of the machine, including all of its parts, as defendant asserts, does not require by way of corollary, as defendant argues, that such *user* is also the ultimate *purchaser* of the many parts which the machine manufacturer has made into a complete machine. The statute does not refer to ultimate use. It refers to ultimate purchase, and that is the statutory language we are to construe and apply to the facts of record.

Section 11.8(g) of the customs regulations, 19 CFR, section 11.8(g), relating to section 304(a)(2) of the Tariff Act of 1930, as amended, with respect to an imported article which is usually combined with another article subsequent to importation, states that "An article *excepted from marking under section 11.10* (customs regulations) is not within the scope of section 304(a)(2), Tariff Act of 1930, as amended, and is not subject to the requirements of this paragraph." [Parenthetical explanation and emphasis added.]

Section 11.10 of the customs regulations, dealing with exceptions to marking requirements, provides:

(a) Articles within any specification in section 304(a)(3), Tariff Act of 1930, as amended, are hereby excepted from the requirement of marking. The marking of the container of an article will reasonably indicate the origin of such article within the meaning of section 304(a)(3)(D) if the article is imported (or repacked under section 562, Tariff Act of 1930, as amended) in a container which will reach the ultimate purchaser in the United States unopened. * * *

It appears, therefore, that subparagraph (2), *supra*, creates no issue here as to any imported empty spools which reach the ultimate purchaser of the spools, in the United States, in adequately marked unopened containers.

In *United States* v. *Gibson-Thomsen Co., Inc.*, 27 C.C.P.A. (Customs) 267, C.A.D. 98, cited by plaintiff, the merchandise consisted of imported wood brush blocks and toothbrush handles, each marked with the name of the country of origin. The word "Japan" was die-sunk on the imported articles, but the mark was in such a place that when, after importation, bristles were inserted to convert the handles and blocks into toothbrushes and into hairbrushes, the marking was covered. Appellant, in the *Gibson-Thomsen* case (defendant below), argued that the ultimate purchaser of the imported articles was the retail purchaser of the toothbrush or of the hairbrush, and that the manufacturer was not the ultimate purchaser. Because of

the obliteration of the marking in the process of manufacture, defendant contended that retail purchasers of the toothbrushes or hairbrushes would not know the country of origin of the handle or brush block. Hence, so defendant contended, it necessarily followed that the imported articles were not marked as the law required.

In a cogent opinion, this division held (*Gibson-Thomsen Co., Inc.* v. *United States*, 2 Cust. Ct. 172, C.D. 117) that the manufacturer of the brushes was the ultimate purchaser of the imported blocks and handles; that the retail purchaser of the brushes was not the ultimate purchaser of the imported articles; and that, so far as the manufacturer (ultimate purchaser) was concerned, the imported articles were properly marked.

Our appeals court affirmed this decision, saying:

We have carefully examined the legislative history of section 304(a), *supra*, relied upon by counsel for the Government * * * relative to the meaning intended by the Congress to be ascribed to the language "ultimate purchaser in the United States," contained in that section, and find nothing therein to indicate that the Congress intended other than to require that imported articles, capable of being marked, except such articles as the Treasury Department is authorized to exempt, be marked so as to indicate to the ultimate purchaser of *such imported articles* the country of their origin.

\*     \*     \*     \*     \*     \*     \*

We find nothing in the statute nor in its legislative history to warrant a holding that the Congress intended to require that an imported article, which is to be used in the United States as material in the manufacture of a new article having a new name, character, and use, and which, when so used, becomes an integral part of the new article, be so marked as to indicate to the retail purchaser of the new article that such imported article or material was produced in a foreign country. On the contrary, we are of opinion that the Congress intended, by the provisions of section 304(a)(2), *supra*, to cover only such imported articles as do not lose their identity as such when *combined* with other articles. [Pp. 272, 273; emphasis quoted.]

To like effect, is *M. Grumbacher* v. *United States*, 4 Cust. Ct. 340, C.D. 357, having to do with the marking of wooden handles for artists' brushes.

Relevant to our consideration here, it is observed that section 11.8(e), 19 CFR, section 11.8(e), of the customs regulations provides:

(e) If an imported article is to be used in the United States in the manufacture of an article having a name, character, or use differing from that of the imported article, the principle of the decision in the case of *United States* v. *Gibson-Thomsen Co., Inc.* (C.A.D. 98) will apply to such imported article. Under this principle, the manufacturer or processor in the United States who will convert or combine the imported article into the different article will be considered the "ultimate purchaser" [6a] of the imported article within the contemplation of section 304(a), Tariff Act of 1930, as amended.

The footnote to this regulation states:

[6a] It is not feasible to state who will be the "ultimate purchaser" in every circumstance. Broadly stated, an "ultimate purchaser" may be defined as the

last person in the United States who will receive the article *in the form in which it was imported.* If an imported article will be used in manufacture, the manufacturer is the "ultimate purchaser." If an article is to be sold at retail in its imported form, the purchaser at retail is the "ultimate purchaser." A person who subjects an imported article to a process which results in a substantial transformation of the article, even though the process may not result in a new or different article, may be an "ultimate purchaser" in certain circumstances; but if the process is merely a minor one which leaves the identity of the imported article intact, the consumer or user of the article, who purchases it after the processing, will be regarded as the "ultimate purchaser." [Emphasis added.]

The case which, on its facts, appears to be most nearly analogous to the facts here, is *Lagerdorf Trading Co.* v. *United States*, 48 Treas. Dec. 737, Abstract 50370 (1925), which was decided by the Board of General Appraisers. Empty wooden spools, intended to be used for thread to be wound on the spools, were imported in bags. The bags were clearly marked with the name of the country of origin, but each individual spool was not marked. The collector assessed the imported empty spools with marking duties, under section 304(a) of the Tariff Act of 1922, on the ground that they were not properly marked. Under section 304(a) of the 1922 act, there were no exemptions such as those now found in section 304 of the Tariff Act of 1930, as amended. It was argued that, if the spools were marked, the mark would be covered when the thread was wound on the spools in the United States, and so the ultimate purchaser, the buyer of the thread, would not be advised of the country of origin of the spool.

The board rejected this argument on the ground that the ultimate purchaser of the imported empty spools was the thread manufacturer, not the retail buyer of the spool of thread. In its opinion, the board said:

There is nothing in the argument that the marking on the end of the spool, if conspicuous, would not be permanent, because under the customs of the trade thread labels subsequently placed over the end of the spools would obliterate that. The answer to that is the wooden spool is the article of importation; that when it enters into a roll of thread as the core thereof, the wooden spool ceases to be the article of commerce and the thread on that core becomes the article of commerce, to wit, spool thread instead of a wooden spool, that is the quantity of thread on a spool. The spool is no longer sold. The thread alone is sold, and it is unnecessary that the origin of the spool should any longer be manifested, when the spool itself has ceased to be the commercial entity.

An appeal was dismissed without opinion. *Id.* v. *Id.*, 14 Ct. Cust. Appls. 487. It should be observed that there was, in the Tariff Act of 1922, no exception from individual marking provided with respect to merchandise that was sold to ultimate purchasers in adequately marked containers, such as the statutory exception invoked in this case under the express provision of the Tariff Act of 1930, as amended.

There is no easy general rule that can be laid down by the court as

to who is an ultimate purchaser, applicable to all cases where unmarked goods are imported in bulk in marked containers. The question in each case, on the facts there before the court, is whether the purchaser of the marked unopened container is the ultimate purchaser of the contents, that is, the imported unmarked merchandise. If he is the ultimate purchaser, the terms of the statute are satisfied. If he is not the ultimate purchaser of the merchandise, then the terms of the statute may not be satisfied, and further inquiry as to the applicability of exceptions may then be necessary.

As to the imported empty spools that are sold in the United States in adequately marked unopened containers to manufacturers of business machines, we hold on the facts of record that such manufacturers are the ultimate purchasers. There is no showing that the empty spools, as such, are thereafter an article of commerce in the United States. To the contrary, it is shown that the spools become an integral part of a manufactured article, the business machine, and that such machines are the articles which are sold by the business machine manufacturers. We do not regard the process of business machine manufacture as a minor one which leaves intact the identity of the imported merchandise, the empty spool, as an article of commerce.

As to the imported empty spools that are sold in the United States in adequately marked unopened containers to ribbon manufacturers, the facts are different, but on the facts of record our decision is similar.

What the ribbon manufacturers sell are ribbons. True, the ribbon is wound on a spool. But it is the ribbon, so wound, and not the spool as such, which the business machine manufacturers buy from the ribbon manufacturers.

There is evidence that the process of winding ribbons on empty spools is not merely a process of filling the spool, but one that requires technical skill and competence in order to insure that the ribbon shall be evenly distributed, properly inked, and shall have properties of tension and ability to reverse, requisite to operation in the particular business machine for which the ribbon is intended.

We hold, on the facts of record, that the ribbon manufacturers are the ultimate purchasers of the imported empty spools sold to them. We do not here hold, and we should not be understood as holding, that container marking would necessarily be sufficient in case of sales of imported empty machine spools other than under the circumstances that are presented in this record.

The fact, conceded to be true, that the spools are imported and delivered in adequately marked containers, both to the business machine manufacturers and the ribbon manufacturers, makes it unnecessary to review the considerable evidence that was adduced, *pro* and *con*, on the issue whether individual spool marking involved an eco-

nomically prohibitive expense. This issue, under section 304(a)(3)(C), does not arise in view of our decision as to the ultimate purchaser of the imported empty spools.

No issue is raised as to additional duty of 10 per centum under section 304(c) of the Tariff Act of 1930, as amended. The issue before us arises from the decision of the collector to withhold imported articles from delivery under section 304(d). Plaintiff seeks delivery of the withheld merchandise, a remedy within the cognizance of this court under sections 514 and 515 of the Tariff Act of 1930. By timely protest, plaintiff has raised the issue as to whether the collector's decision is lawful.

These spools being excepted, on the facts of record, under section 304(a)(3), and the requirements of section 304(b) having been met, the decision of the collector to withhold delivery under section 304(d) was unlawful.

The protest is sustained. Judgment will be entered overruling the decision of the collector and directing delivery of the merchandise.