## NOEL R. CHAPIN COMPANY
### v.
### UNITED STATES.
### C.D. 4586; Court No. 72-5-01053.

United States Customs Court.
Feb. 19, 1975.

Glad, Tuttle & White, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiff.

Carla A. Hills, Asst. Atty. Gen., New York City (Robert B. Silverman, New York City, trial atty.), for defendant.

RICHARDSON, Judge:

The merchandise in this case consists of panes of non-glare glass in varying sizes exported from Japan, entered at Los Angeles-Long Beach, California, between June, 1968 and December, 1969, and assessed, in addition to ordinary duties, with a 10 percent marking duty pursuant to 19 U.S.C.A., section 1304(c) (section 304(c), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938). The plaintiff-importer contends in this action that the glass is exempt from the marking requirements because (1) the containers were marked in a manner as would reasonably indicate to the ultimate purchaser the country of origin of the glass, and (2) an ultimate purchaser, by reason of the chararter of the imported glass, must necessarily know its country of origin even though it is unmarked.

The pertinent statutes read:

§ 1304. Marking of imported articles and containers — Marking of articles

(a) Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or

container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

\*  \*  \*  \*  \*  \*

(3) Authorize the exception of any article from the requirements of marking if—

\*  \*  \*  \*  \*  \*

(D) The marking of a container of such article will reasonably indicate the origin of such article;

\*  \*  \*  \*  \*  \*

(H) An ultimate purchaser, by reason of the character of such article or by reason of the circumstances of its importation, must necessarily know the country of origin of such article even though it is not marked to indicate its origin;

\*  \*  \*  \*  \*  \*

Additional duties for failure to mark

(c) If at the time of importation any article (or its container, as provided in subsection (b) of this section) is not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or the article (or its container, as provided in subsection (b) of this section) marked after importation in accordance with the requirements of this section (such exportation, destruction, or marking to be accomplished under customs supervision prior to the liquidation of the entry covering the article, and to be allowed whether or not the article has remained in continuous customs custody), there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause. Such duty shall be levied, collected, and paid in addition to any other duty imposed by law and whether or not the article is exempt from the payment of ordinary customs duties. The compensation and expenses of customs officers and employees assigned to supervise the exportation, destruction, or marking to exempt articles from the application of the duty provided for in this subsection shall be reimbursed to the Government by the importer.

And section 11.10(a) of the Customs Regulations [as revised January 1, 1968] reads in relevant part:

(a) Articles within any specification in section 304(a)(3), Tariff Act of 1930, as amended, are hereby excepted from the requirement of marking. The marking of the container of an article will reasonably indicate the origin of such article within the meaning of section 304(a)(3)(D) if the article is imported (or repacked under section 562, Tariff Act of 1930, as amended) in a container which will reach the ultimate purchaser in the United States unopened.  .  .  .

In the pleadings it is admitted that the containers in which the glass was imported were clearly marked with the country of origin [in this case Japan], and also that non-glare glass is wholly or chiefly used in picture framing. And plaintiff concedes that the individual panes of glass were not marked with the country of origin. Thus, the primary consideration underlying the issues raised under section 1304(a) is the identity of the *ultimate purchaser* or *purchasers* of the imported glass.

The record in the case consists of the testimony of six witnesses, glass samples, documentary exhibits, and the official papers. On the matter of the *ultimate purchaser* the record shows that the plaintiff-importer is a supplier of mouldings, hardware, paper products, machinery, tools, and glass to custom framers, among others. George A. Reynolds, a salesman for the plaintiff since 1967 and the only witness called on plaintiff's behalf, testified that he sold some of the imported non-glare glass to custom

framers mostly from Santa Monica south to the border and east into Las Vegas and to Yuma on the south, in the original, unopened containers, a sample of which is depicted in the photograph designated as exhibit 3. The witness' sales did not encompass the entire shipments involved herein. However, he testified that it was plaintiff's policy only to sell the glass to custom framers, in the original, unopened containers and usually in five (5) case lots.

But John A. Jones of Hollywood, California, a salesman in the employ of Smith Hardware Company since 1965, testified that he sold non-glare glass over the counter to customers, that this was the only way in which Smith Hardware Company sold this glass, and that according to the name appearing on the case in which the glass was purchased by his company it came from the plaintiff, although it was acquired directly from Chet Siler, a custom framer. [The name Smith Hardware Company of Los Angeles, Calif. appears on a list compiled by plaintiff for the customs service and said to represent purchasers of the imported glass (exhibit A).] And it was developed in testimony elicited from another witness, Michele Schiffman, that four of the other firms whose names appear on exhibit A made over-the-counter sales of individual panes of such glass without identifying marks of origin to customers who sought to buy just the glass itself.

The plaintiff, of course, is not a consumer of the subject glass. Consequently, in the light of the foregoing testimony concerning sales of the glass *per se*, overall evidence of customer usage and sales becomes essential to the determination of the identity of the ultimate purchaser or purchasers in this case. See and compare, Grafton Spools, Ltd. v. United States, 45 Cust.Ct. 16, C.D. 2190 (1960), and Diamond Match Company v. United States, 49 CCPA 52, C.A. D. 796 (1962).

In C.D. 2190, involving unmarked, empty ribbon spools imported from England in cases marked with the country of origin, the customs court said (pp. 23–24):

There is no easy general rule that can be laid down by the court as to who is an ultimate purchaser, applicable to all cases where unmarked goods are imported in bulk in marked containers. The question in each case, on the facts there before the court, is whether the purchaser of the marked unopened container is the ultimate purchaser of the contents, that is, the imported unmarked merchandise. If he is the ultimate purchaser, the terms of the statute are satisfied. If he is not the ultimate purchaser of the merchandise, then the terms of the statute may not be satisfied, and further inquiry as to the applicability of exceptions may then be necessary.

In that case the court held, among other things, that manufacturers of business machines that utilized the empty spools were the ultimate purchasers of the spools they received in marked, unopened containers. In this connection, the court said (p. 24):

. . . There is no showing that the empty spools, as such, are thereafter an article of commerce in the United States. . . .

In C.A.D. 796, involving unmarked, wooden spatulas in packages of 50 held together by a paper band on which was marked the words "Made in Japan", the legal sufficiency of this marking was sustained upon evidence that the imported spatulas actually reached the ultimate purchasers, i. e., arts and crafts customers and manufacturers of ice-cream-on-a-stick, in marked, unopened containers, and that they were not sold individually. In this connection the majority in our appeals court stated with respect to the arts and crafts customers who comprised only a small percentage of the users of this merchandise [½ of one percent] (p. 59):

. . . there is no evidence that any of them reached the purchasing consumer in any form other than in unbroken, marked packages of 50. We

therefore affirm the Customs Court's holding that the marking of a paper band container of 50 spatulas in such cases falls within the purview of Customs Regulation 11.10 and would "reasonably indicate the origin of such articles within the meaning of section 304(a)(3)(D) * * * [because the containers] * * * will reach the ultimate purchasers in the United States unopened."

In marked contrast to the evidence before the courts in C.D. 2190 and C.A. D. 796, the aforementioned testimony in the instant case discloses a further introduction into the commerce of the United States of the imported glass by some if not all of the plaintiff's customers, and the sale of individual panes of glass by some of them.

 The plaintiff argues that all of its customers were "ultimate purchasers" of the glass in question, whether they used it to make custom frames or cut it to size to sell to their customers of non-glare glass. Cutting to size and selling to customers does not constitute a process of manufacture of a new article so as to comply with the marking exception provided in section 304(a)(3)(D) of the Tariff Act, as amended, and Customs Regulation 11.10.

Plaintiff did not produce evidence of customer usage and sales. Under the terms of a discovery order entered herein on March 20, 1974, the plaintiff was required to furnish defendant with the names and business addresses of the individuals who purchased the imported glass from it and the quantity of glass received by each purchaser, in default of which plaintiff would be precluded from introducing evidence at the trial on the subject of customer usage and sales of the imported glass. Plaintiff furnished defendant with a customer listing pursuant to the terms of said discovery order, but failed to furnish in this listing information concerning the quantities of glass delivered to its customers. Plaintiff is, therefore, in partial default under the terms of the said discovery order.

In the absence of evidence of customer usage and sales plaintiff cannot succeed in identifying the ultimate purchaser or purchasers in relation to any importation of glass involved in this case. As counsel for the defendant aptly observes in the brief (pp. 13–14), ". . . the record at bar indicates that the importer has no knowledge as to the consumption of the *subject* merchandise, or generally, as to the volume of non-glare glass that was subsequently resold over-the-counter by the plaintiff's purchasers . . . ." As such, there is a fatal defect in the proofs tendered by plaintiff under the issues before the court. The plaintiff has offered no evidence as to the identity of the ultimate purchasers of the merchandise which was *actually imported* in the entries at bar. It follows that the action herein must be dismissed for insufficiency of evidence.

Judgment will be entered herein accordingly.